832 A.2d 403

**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Ronald Grant CHAMPNEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 5, 2000.

Decided Sept. 24, 2003.

438

440

Marsha Ann Chwastiak, Kent D. Watkins, St. Clair, for Ronald Grant Champney, Appellant.

Claude A.L. Shields, Charles A. Bressi, Pottsville, Amy Zapp, Harrisburg, for the Com. of PA, Appellee.

Before: FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

JUSTICE CASTILLE.

Before this Court is appellant's direct appeal from the sentence of death imposed by a jury on October 26, 1999. Because we find no merit to the issues appellant raises, we affirm the judgment of sentence.

Appellant was arrested on October 8, 1998 and charged with first degree murder,[1] aggravated assault,[2] burglary,[3] criminal trespass,[4] theft by unlawful taking,[5] receiving stolen property[6] and possessing instruments of crime.[7] On October 25, 1999, a jury convicted Champney of all charges. The following day, the same jury, having found two aggravating circumstances[8]

1. 18 Pa.C.S. § 2501(a).

2. 18 Pa.C.S. § 2702(a)(1) and (a)(4).

3. 18 Pa.C.S. § 3502(a).

4. 18 Pa.C.S. § 3503(a)(1)(ii).

5. 18 Pa.C.S. § 3921(a).

6. 18 Pa.C.S. § 3925(a).

7. 18 Pa.C.S. § 907(a).

8. The aggravating circumstances were: (1) appellant contracted to be paid by another person for the killing of the victim (42 Pa.C.S. § 9711(d)(2)); and (2) appellant had a significant history of felony

and three mitigating circumstances,[9] and finding that the aggravating circumstances outweighed the mitigating circumstances, sentenced appellant to death. This appeal followed.

 In cases where a sentence of death has been imposed, this Court performs a self-imposed duty to review the sufficiency of the evidence for first degree murder. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). The evidence introduced at trial and summarized below plainly was sufficient to support appellant's first degree murder conviction.

 On June 4, 1992, Roy Bensinger was shot and killed in the driveway of his home in Schuylkill County with a .30–.30 caliber Winchester rifle stolen from his home. The evidence, which included appellant's admissions to others, showed that Bensinger's wife, Beth Bensinger, hired appellant to kill her husband and agreed to pay appellant from the proceeds of her husband's life insurance policy. David Blickley, a prosecution witness, testified that appellant told him that he killed Roy Bensinger because Beth Bensinger hired him to do so. Blickley also stated that appellant took him to the place where the killing had occurred and demonstrated how he had killed the victim. Appellant also told Blickley that he took weapons and ammunition from the victim's home: appellant's account to Blickley of items that he stole matched the items missing from the victim's home. One of the victim's neighbors testified that he heard a gunshot between 6 p.m. and 7 p.m. on the day of the murder, and the pathologist placed the victim's time of death at between 5:30 and 6:30 p.m. Appellant presented alibi witnesses, none of whom were able to account for appellant's whereabouts before nearly sunset, which occurred at 8:31 p.m. on the day of the murder.

convictions involving the use or threat of violence (42 Pa.C.S. § 9711(d)(9)).

9. The mitigating circumstances were: (1) lack of education/limited ability; (2) easily influenced; and (3) dysfunctional home life. 42 Pa.C.S. § 9711(e)(8).

Appellant fled to Oregon shortly after the killing and visited his half-sister. She described his actions as those of someone who was afraid of being observed. For example, appellant closed curtains in any room in which he was sitting. He immediately left Oregon after police visited his sister's home. He made his way to North Carolina where he worked for a trucking firm. There, he made several statements to Joy Hinshaw in which he described killing someone in a driveway with one shot from a .30 caliber rifle.

 In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, supports the jury's finding of all of the elements of the offense beyond a reasonable doubt. *See, e.g., Commonwealth v. Spotz*, 563 Pa. 269, 759 A.2d 1280 (2000). The elements of first degree murder exist where the Commonwealth shows "that the defendant acted with the specific intent to kill, that a human being was unlawfully killed, that the person accused did the killing, and that the killing was done with premeditation or deliberation." *Id.* at 1283 (citing 18 Pa.C.S. § 2502(d)); *Commonwealth v. Mitchell*, 528 Pa. 546, 599 A.2d 624, 626 (1991). Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence of appellant's contract killing of Roy Bensinger was amply sufficient to support the first degree murder verdict.

 Appellant claims, however, that the guilty verdict was against the weight of the evidence because, *inter alia*, (1) the jury supposedly ignored evidence that the police did not thoroughly investigate the circumstances under which the victim's body was discovered and that there were contradictory accounts by those present at the murder scene; (2) testimony regarding appellant's admissions was inconsistent; and (3) there were no eyewitnesses to the murder and the murder weapon was never found. The standard for review of a claim that a verdict is against the weight of the evidence is well-established:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Johnson*, 542 Pa. 384, 394, 668 A.2d 97, 101 (1995), *cert. denied*, 519 U.S. 827, 117 S.Ct. 90, 136 L.Ed.2d 46 (1996). An appellate court cannot substitute its judgment for that of the finder of fact. *Commonwealth v. Pronkoskie*, 498 Pa. 245, 251, 445 A.2d 1203, 1206 (1982). Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Hawkins*, 549 Pa. 352, 368, 701 A.2d 492, 500 (1997), *cert. denied*, 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998).

*Commonwealth v. Small*, 559 Pa. 423, 741 A.2d 666, 672–73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim. *Commonwealth v. Tharp*, 830 A.2d 519, 528 (Pa.2003) (citations omitted).

██ The jury was free to believe all, part or none of the evidence against appellant outlined above. The points appellant identifies as affecting the weight of the evidence were points he was free to argue at trial. Against these points were arrayed, however, appellant's admissions of guilt, the insufficiency of his alibi, the establishment of the murder for hire motive for the killing, and strong circumstantial evidence including flight. It was exclusively within the jury's province to weigh these matters. That the jury convicted appellant is not so contrary to the evidence as to shock one's sense of justice. Thus, this claim fails.

Appellant's next claim is that he is entitled to a new trial because the Commonwealth supposedly obtained his conviction with the testimony of an "unindicted co-conspirator," *i.e.* David Blickley, in circumstances where the Commonwealth allegedly knew that Blickley's testimony was perjured and failed to disclose the nature of arrangements made with

Blickley in exchange for his testimony. Appellant petitioned this Court to reopen the trial court record on the ground that he had discovered new evidence confirming the existence of an undisclosed arrangement between Blickley and the Commonwealth related to his testimony at appellant's trial. On January 22, 2002, we remanded to the trial court for an evidentiary hearing on appellant's after-discovered evidence claim. The trial court held the evidentiary hearing on April 8, 2003. The parties then briefed the question in the trial court and the trial court has since filed a supplemental opinion addressing and rejecting the claim. The trial court found that the evidence appellant presented would not have compelled a different outcome if it had been produced at appellant's trial. Appellant has now submitted a supplemental brief to this Court, while the Commonwealth relies upon its trial court brief in opposition to the claim.

The background for appellant's claim that the Commonwealth knowingly introduced perjured testimony from Blickley is as follows. Blickley testified at appellant's trial that appellant had admitted to him that he committed the murder; Blickley also claimed that he did not solicit appellant to commit the murder. Appellant argues that the Commonwealth knew that this testimony was perjured because the Commonwealth's pre-trial evidence, including evidence presented at appellant's preliminary hearing, suggested that David Blickley had hired appellant to shoot the victim. Thus, Brian Blickley, David's brother, testified at the preliminary hearing that appellant had told him that David Blickley hired appellant to kill Roy Bensinger. Further, the affidavit of probable cause submitted in support of appellant's arrest warrant included statements from Brian Blickley, Michael Setlock and Leroy Long, all to the effect that appellant admitted that he committed the murder, while claiming that David Blickley had hired him to do so. Meanwhile, David Blickley, acting on the advice of counsel, asserted his Fifth Amendment rights and refused to answer any questions at the preliminary hearing.

As further proof of the Commonwealth's alleged suborna-tion of perjury, appellant argues that Claude A. Lord Shields, Esquire, then-District Attorney of Schuylkill County, had stated in re-election campaign speeches that he believed that David Blickley had hired appellant to kill Roy Bensinger. These campaign statements, appellant alleges, further demon-strate the Commonwealth's knowledge that Blickley's trial testimony was false.

■ This evidence does not prove that David Blickley's trial testimony was perjured. During the investigation of this murder, Blickley gave a statement to investigators indicating that appellant had admitted to him that he committed the murder and that Beth Bensinger had hired appellant to kill her husband. Blickley's trial testimony was consistent with this statement. To the extent that **other** witnesses, including Brian Blickley, told police that it was David Blickley, rather than Beth Bensinger, who hired appellant to kill the victim, they were not relating their own first-hand knowledge but, rather, were merely repeating what **appellant** (not David Blickley) had told them. All this proved was that appellant had given inconsistent statements to a number of individuals as to who had hired him to commit the murder. Notably, however, his statements were consistent on the seminal is-sue—that he was the man who fired the fatal bullet that killed Roy Bensinger. Appellant's varying accounts regarding the person who hired him, however, do not establish that David Blickley's testimony was false or that the Commonwealth knew the testimony was untrue but presented it anyway.[10] Because this aspect of appellant's claim that his conviction was based on the Commonwealth's knowing presentation of per-jured testimony is meritless, the claim fails.

10. Not surprisingly, the players in this murder for hire led tangled lives. Evidence demonstrated that Beth Bensinger had a daughter, Melissa, fathered by David Blickley. Brian Blickley testified that appellant told him that David Blickley had hired him to kill the victim because the victim had molested Melissa. David Blickley told investigators that Beth Bensinger and appellant had started a romantic relationship that failed and that appellant was in love with Beth Bensinger. These circumstances perhaps shed some light on why appellant gave the varying accounts of the slaying to others.

Turning to the component of the claim involving former District Attorney Shields, Mr. Shields testified at the remand hearing that: "as a general rule I don't believe anything Mr. Blickley says. That doesn't mean that some of his statements may not be true in whatever context he's in but I don't trust Mr. Blickley at all under any context." N.T. 4/8/03 at 38. Shields also stated that his campaign comments were based upon the preliminary hearing testimony of Brian Blickley, who indeed had stated that his brother David had paid appellant to commit the murder. *Id.* at 39. Shields further testified that he did not state in any speeches that he did not believe David Blickley. *Id.* As the trial court noted in its remand opinion: "[n]o evidence was presented to demonstrate Blickley lied during his trial testimony. Although District Attorney Shields may not have believed Blickley, such a belief does not necessarily indicate knowledge that Blickley was lying when he testified." Slip op. 5/22/03, at 8. We agree with the trial court's analysis of this particular claim.

 Appellant also claims that the Commonwealth violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose to the defense how it had secured David Blickley's cooperation. Appellant speculates that, because Blickley asserted his Fifth Amendment privilege at the preliminary hearing, it is illogical that he would later testify for the Commonwealth at appellant's trial without having first entered into an agreement with the prosecution and that such agreement should have been disclosed pursuant to *Brady.* Contrary to appellant's conjecture, Blickley testified at appellant's trial that he was testifying because he was "tired of carrying this on my shoulders, this information" and that no promises had been made to him by any authorities in exchange for his testimony. N.T. 10/21/99 at 238–39.

The remand hearing produced no evidence to support appellant's allegation of an undisclosed deal between Blickley and the Commonwealth. At best, the testimony indicated that Blickley was cooperating with federal agents in various investigations with the hope of ingratiating himself with federal authorities so as to secure a reduction in his twenty-five year

federal sentence.[11] Blickley admitted that he hoped that his testimony in appellant's trial would also result in a reduction of his federal sentence and had discussed this with his federal attorney and with representatives of the U.S. Attorney's office. N.T. 4/8/03 at 52. But, Blickley emphatically stated that he had not discussed any reduction of his federal sentence with the District Attorney's office prior to appellant's trial. *Id.* at 53, 54, 56, 57. Blickley further testified that he and his federal attorney had discussed his hope that his testimony in appellant's case would lead to a reduction of his federal sentence, but that the federal prosecutors never indicated that cooperation in appellant's case would be helpful in that regard. *Id.* at 58, 61.

Blickley's testimony as to the non-existence of any "deal" was fully corroborated by the Commonwealth. The trial prosecutor, First Assistant District Attorney Charles Bressi, testified that: he had never talked to Blickley about his cooperation with federal authorities or his hopes of reducing his federal sentence; he had made it clear to Blickley that he would not be granted immunity for his testimony in appellant's case; [12] no one in the District Attorney's office discussed Blickley's cooperation in appellant's case with federal agents prior to appellant's trial; and prior to appellant's trial, Blickley never asked Bressi to testify on his behalf or otherwise make his cooperation in appellant's case known to federal authorities. *Id.* at 7, 9, 11, 13, 18.

Appellant points to a letter dated November 4, 1999 (approximately two weeks after the conclusion of appellant's trial) from ADA Bressi to Assistant U.S. Attorney Mitchell Zamoff

11. In December of 1999, shortly after the conclusion of appellant's trial, the U.S. Attorney's Office filed a motion in federal court under Rule 35 of the Federal Rules of Criminal Procedure seeking a reduction in Blickley's federal sentence based upon his cooperation with federal authorities and in appellant's case. As of the date of the remand hearing (April 8, 2003), the motion had not been decided, and Blickley's sentence had not been reduced as a result of any cooperation with federal authorities or his testimony in appellant's case.

12. Prior to appellant's preliminary hearing, Blickley had believed that he was a suspect in Roy Bensinger's murder and therefore requested immunity for his testimony.

in which Bressi had related that Blickley had testified in appellant's trial, that his testimony was consistent with information provided prior to trial, and that it was helpful to the prosecution. This letter, according to appellant, indicates a preexisting agreement by the District Attorney's Office to help Blickley in his efforts to reduce his federal sentence in exchange for his testimony in appellant's case. Blickley, however, testified that it was not until after appellant's trial that he requested that ADA Bressi send the letter to AUSA Zamoff. *Id.* at 63. The trial court found that appellant had "presented no evidence of any agreement or even discussion between Blickley and the Commonwealth or the United States Attorney" regarding Blickley obtaining such a letter from Bressi to support his request for a reduction of his federal sentence. Slip Op. 5/22/03, at 4.

Reviewing the testimony of Blickley, DA Shields and ADA Bressi, the trial court indicated that it "place[d] very little faith in Mr. Blickley's credibility" and "would find it very difficult to rely upon his testimony that no deal was brokered in exchange for his cooperation against the defendant" but for the testimony of DA Shields and ADA Bressi in which both denied the existence of any deal or any discussion regarding a deal. Slip Op. 5/22/03, at 10–11. Thus, the trial court found the testimony of DA Shields and ADA Bressi to be credible. Because the trial court's findings in this regard are fully supported by the testimony upon remand, we will not disturb it.

Moreover, the trial court also properly found that the situation here is distinguishable from that obtaining in *Commonwealth v. Strong*, 563 Pa. 455, 761 A.2d 1167 (2000), where this Court noted that, "[a]ny implication, promise or understanding that the government would extend leniency in exchange for a witness' testimony is relevant to the witness' credibility." *Id.* at 1171. In *Strong*, the defendant had produced evidence of communications between the prosecutor and a witness, including letters written prior to trial referring to a negotiated deal. Here, appellant has not produced any proof of a promise or deal between Blickley and the Commonwealth

450

and the principals whom he alleged had struck such a deal specifically denied under oath that one was made. Appellant's mere assumption that something such as a promise to assist in reducing his federal sentence must have been made is not sufficient to establish that such an agreement in fact existed. *See Commonwealth v. Morales,* 549 Pa. 400, 701 A.2d 516, 522–23 (1997) (mere conjecture is insufficient to prove *Brady* violation for Commonwealth's alleged failure to disclose full extent of agreement with witness).

Furthermore, the trial court aptly noted the concurrence of this author in *Strong,* which noted that a witness without a firm agreement with prosecutors may actually have greater incentive to testify favorably for the Commonwealth than a witness who has a fully negotiated agreement. *Strong,* 761 A.2d at 1178 (Castille, J., concurring). Here, appellant's counsel elicited testimony at trial to the effect that Blickley hoped that his testimony at appellant's trial would lead to a sentencing break on his federal charges. Further, the trial court charged the jury to consider that Blickley's testimony may have been motivated by and biased in favor of the Commonwealth due to his hope of reducing the federal sentence he was serving at the time of appellant's trial. The trial court instructed the jury to view Blickley's testimony with caution because of his hopes for leniency, regardless of whether any promise was actually made to him. Because, as the trial court noted in its opinion, the jury was well aware of possible motivations for Blickley's testimony, and because appellant has failed to produce any evidence that the Commonwealth had entered into any agreement, this claim fails.

 Appellant next claims that he is entitled to a new trial because the trial court erred in denying his motion to compel the Commonwealth to file a bill of particulars. Rule 304(d) of the Rules of Criminal Procedure gives the trial court broad discretion to "make such order as it deems necessary in the interests of justice" when a defendant files a motion to compel the Commonwealth to file a bill of particulars. A bill of particulars, an anachronism of past procedural rules, serves

a narrow purpose; it is not an appropriate vehicle by which to obtain discovery of the Commonwealth's evidence:

A bill of particulars is intended to give notice to the accused of the offenses charged in the indictment so that he may prepare a defense, avoid a surprise, or intelligently raise pleas of double jeopardy and the statute of limitations. *Commonwealth v. Simione*, 447 Pa. 473, 291 A.2d 764 (1972); *[Commonwealth v.] Dreibelbis*, 493 Pa. [466,] 472, 426 A.2d [1111,] 1114 [(1981)]. It is not a substitute for discovery and the Commonwealth's evidence is not a proper subject to which a bill of particulars may be directed. *Commonwealth v. Davis*, 470 Pa. 193, 368 A.2d 260 (1977); *Dreibelbis*, 493 Pa. at 472–73, 426 A.2d at 1114. We agree with the trial court that Appellant attempted to disguise his discovery requests as a bill of particulars, and, conclude that the trial court properly rejected Appellant's attempt to stop these witnesses from offering their corroborative testimony.

*Commonwealth v. Chambers*, 528 Pa. 558, 599 A.2d 630, 641 (1991).

■ Here, appellant requested that the Commonwealth specify in a bill of particulars: appellant's motive for the killing, whether the Commonwealth alleged that appellant was involved in a conspiracy to kill the victim, the names of any alleged co-conspirators, and any specific acts in furtherance of the conspiracy. The trial court denied appellant's request finding that appellant's alleged motive was not a proper subject of a bill of particulars and that appellant was not charged with conspiracy. The trial court did not abuse its discretion in denying appellant's motion for a bill of particulars because the request for motive was obviously a discovery request disguised as a bill of particulars, and the Commonwealth did not charge appellant with conspiracy thereby making the balance of appellant's requests irrelevant. Furthermore, through the discovery process, appellant was made well aware of the nature of the Commonwealth's evidence. Thus, since appellant had more than adequate notice of the nature of the charges against him, the bill of particulars was properly denied.

Appellant's next claim is that the trial court abused its discretion by denying his request for appointment of co-counsel. Approximately four months before his trial, appellant filed a motion for the appointment of co-counsel to assist his court-appointed counsel. The trial court denied the motion. Appellant claims that the trial court abused its discretion in denying the motion because initial counsel needed co-counsel to help prepare the defense to handle the numerous conflicting statements appellant made to witnesses, to develop an immunity argument regarding a particular witness, to appeal a pre-trial order permitting prison officials to cut appellant's fingernails, and to assist counsel in dealing with evidentiary issues at trial. This Court set forth the governing law in rejecting a similar argument in *Commonwealth v. Clark*, 551 Pa. 258, 277, 710 A.2d 31, 40 (1998), as follows:

Appointment of additional counsel is not a matter of right; it is a request addressed to the discretion of the trial court. A trial court possesses broad discretionary powers, necessary to effectively dispose of the multitude of issues that require its attention within the arena of litigation. *Commonwealth v. Powell*, 527 Pa. 288, 590 A.2d 1240 (1991). An appellate court will not reverse a discretionary ruling of a trial court absent an abuse of that discretion. *Coker v. S.M. Flickinger Co.*, 533 Pa. 441, 625 A.2d 1181 (1993).

The record reveals that the trial court did not abuse its discretion in the instant case. Approximately one month before appellant's October 1999 trial, appellant filed a *pro se* pleading requesting an explanation for the trial court's previous denial of the request for co-counsel. At a pre-trial conference on October 8, 1999, the trial court noted that appellant had filed a number of *pro se* requests, all of which had been returned to him because he was represented by counsel. The court then went on to address the filing in which appellant stated that, because his counsel previously requested co-counsel, he did not believe that his counsel was capable of handling the case by herself. The court then questioned appellant's court-appointed counsel regarding whether she doubted her ability to defend appellant effectively. Appellant's counsel

stated unequivocally that she was prepared and able to provide appellant with a competent defense:

> Your Honor, I do believe that the defense is prepared to proceed to trial and that Mr. Champney will get the best, the most competent defense that I can give him.

> \* \* \* \*

> [W]hen I moved the Court for co-counsel, the reason for that motion was that it is a death penalty case. I was not ... I had never intended to represent to the Court that, I never intended to move the Court and express the sentiment that I did not feel I could handle the case. I felt that I was acting and I was acting on Mr. Champney's behalf. I figure it's a complex case. The more lawyers ... I mean if the Court would appoint ten lawyers, that would be great. I realize that's not going to happen. I was acting on Mr. Champney's behalf to get a team of lawyers just because it is a death penalty case and it is a complex case, and I figured his legal interest would be best served with the appointment of co-counsel. But it was not to, never to indicate that I could not handle it myself.

N.T. 10/8/99 at 4–5. Appellant's counsel clearly stated that she was capable of representing appellant without co-counsel. The previous request for co-counsel had been premised on the capital nature of the case, and not on the existence of unusual circumstances necessitating multiple representation. Appellant's present complaint in no way calls into question counsel's assessment of her readiness for trial. The mere fact that the accused and/or his counsel would **prefer** multiple lawyers in no way proves an abuse of discretion in denying multiple representation. Thus, the trial court's denial of the request for co-counsel was a proper exercise of its discretion.

Appellant next argues that the trial court erred in denying his motion in limine seeking to exclude the testimony of David Blickley and Joy Hinshaw—testimony that related appellant's confessions to the murder—because the testimony of both witnesses was allegedly inconsistent with the evidence the Commonwealth presented at appellant's preliminary hearing. David Blickley testified that Beth Bensinger visited him in

prison prior to the murder and told him that she was looking for someone to kill her husband. Later, appellant told Blickley that Beth Bensinger hired him to kill her husband and that appellant had killed him. Hinshaw, who employed appellant as a truck driver in North Carolina after the murder, testified that appellant bragged to her and two other employees that he had "popped" a man in his driveway in Pennsylvania and that the killing was a "hit" for which he would be paid when his partner got out of jail. Appellant never identified this partner by name or gender to Hinshaw.

The evidence demonstrated that appellant had made incriminating statements to a number of people which, though they may have differed in certain details, always contained at least one important consistent admission: that appellant perpetrated the murder. In a reprise of his perjured testimony claim, appellant argues that the trial testimony of David Blickley and Hinshaw was inconsistent with the preliminary hearing testimony that David Blickley, rather than Beth Bensinger, had hired him to commit the murder. That "inconsistency," appellant avers, requires that his confessions to these witnesses should have been excluded. That appellant gave differing accounts as to who hired him to kill the victim does not make his admissions to various people that he killed the victim inadmissible—especially given that appellant consistently admitted in these statements the crucial fact that he was the murderer. Indeed, appellant articulates no cognizable legal theory that would require the **exclusion** of this unquestionably relevant evidence merely because appellant perceives arguments as to its **weight.**

Appellant further asserts that his constitutional rights were somehow violated by the admission of his confessions to Blickley and Hinshaw. This claim is meritless. Blickley and Hinshaw were not agents of the Commonwealth. Because appellant's confessions to them were merely admissions to non-state actors, appellant's constitutional rights were not implicated. Furthermore, appellant has not shown that his admissions were other than voluntary.

Appellant next argues that he was denied his constitutional right to call witnesses on his behalf when the trial court ruled that Beth Bensinger, who was arrested and charged in connection with the murder prior to appellant's trial, was unavailable to testify. Appellant asserts that he had a right to call Bensinger as a witness and have the trial court rule on a question-by-question basis whether her Fifth Amendment privilege applied. Appellant asserts that, if he had been permitted to call Bensinger as a witness, she would have testified that appellant did not shoot her husband. This claim fails.

Beth Bensinger was charged with hiring appellant to kill her husband. She advised the court, in the presence of all counsel including her own counsel, that if called to the stand she would exercise her Fifth Amendment privilege and refuse to answer any questions. Any questions related to whether she hired appellant or whether appellant killed Roy Bensinger would necessarily have required answers that could incriminate Beth Bensinger. In addition, appellant has failed to produce any evidence that Beth Bensinger would have testified that appellant did not kill her husband. "[A] witness should not be placed on the stand for the purpose of having him exercise his [Fifth Amendment] privilege before the jury." *Commonwealth v. Greene*, 445 Pa. 228, 285 A.2d 865, 867 (1971) (witness indicted for same crime as defendant). *See also United States v. Salerno*, 505 U.S. 317, 321, 112 S.Ct. 2503, 120 L.Ed.2d 255 (1992) (witness who properly invokes privilege against self-incrimination and refuses to testify is unavailable to defense as witness); *Commonwealth v. Todaro*, 524 Pa. 64, 569 A.2d 333, 335 (1990) (Commonwealth, once informed that witness intends to claim privilege against self-incrimination, commits error in calling witness to stand before jury); *Commonwealth v. Collins*, 420 Pa.Super. 358, 616 A.2d 1012, 1015 (1992) (trial court's refusal to allow witness for defense to take stand was proper where witness had been indicted for same crime and counsel had informed trial court that witness had been advised to invoke his Fifth Amendment privilege against self-incrimination). Because Beth Bensinger

informed the trial court that she intended to invoke her privilege against self-incrimination, the trial court properly ruled that she was unavailable to testify.

Appellant also claims that he was denied a fair trial because the trial court should have granted Beth Bensinger "judicial use immunity" for her testimony pursuant to *United States v. Sampson*, 661 F.Supp. 514 (W.D.Pa.1987). A district court decision such as *Sampson*, of course, does not bind this Court. In addition, as the *Sampson* court itself noted, the judicial use immunity doctrine it was obliged to follow under the Third Circuit's precedent in *Government of Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir.1980), had been rejected by all other Circuits which had considered the issue, and was also inconsistent with *dicta* in *Pillsbury Co. v. Conboy*, 459 U.S. 248, 261, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983) ("[n]o court has authority to immunize a witness"). *Sampson*, 661 F.Supp. at 518 n. 2. In any event, *Sampson* is distinguishable. In *Sampson*, the federal district court held that judicial immunity should be extended only where the witness's testimony would be "clearly exculpatory," *i.e.*, that there is a reasonable probability that, but for the unavailability of the witness's testimony, the result of the proceeding would have been different, and where no strong governmental interests countervail against a grant of immunity. *Id.* at 519–20. Here, appellant has failed to demonstrate that Beth Bensinger's testimony would be clearly exculpatory. For this reason alone, his argument fails.

Next, appellant claims that the trial court erred in admitting the testimony of a police officer regarding statements appellant made to the officer. The officer testified that, while he was questioning appellant, appellant asked what he was "looking at," which the officer understood to mean how much jail time appellant could receive for the offense. Appellant then told the officer to get the District Attorney and he would "lay everything out for him." N.T. 10/22/99 at 400–01. Appellant also nodded his head affirmatively when the officer mentioned that three bullets were missing from the victim's home and told the officer that the murder weapon had not been destroyed and he might know who had it. *Id.* at 402. Appel-

lant's counsel did not object to the testimony at trial. Appellant now claims that the evidence should have been excluded because its prejudicial effect outweighed its probative value. This claim fails.[13]

 "The admissibility of evidence is a matter addressed to the sound discretion of the trial court and an appellate court may only reverse upon a showing that the trial court abused its discretion." *Commonwealth v. Bridges*, 563 Pa. 1, 757 A.2d 859, 874 (2000), *citing Commonwealth v. Ragan*, 538 Pa. 2, 645 A.2d 811, 818 (1994). The evidence of appellant's statements to the police officer, as well as his affirmative nod regarding the ammunition missing from the victim's home, was unquestionably relevant in that it demonstrated that appellant had knowledge of the crime. Furthermore, appellant has failed to demonstrate how he was unfairly prejudiced by the relevant testimony. Thus, the trial court did not err in admitting the evidence.

 Appellant next argues that the sentencing verdict was against the weight of the evidence. The evidence presented to the jury demonstrated that appellant had an extensive history of violent crimes and felony convictions and that the instant murder was a murder for hire. This evidence amply supported the jury's findings of the two aggravating circumstances—appellant contracted to be paid by another person for the killing of the victim (42 Pa.C.S. § 9711(d)(2)) and appellant had a significant history of felony convictions involving the use or threat of violence (42 Pa.C.S. § 9711(d)(9)). It was exclusively for the jury to weigh these circumstances against the mitigating circumstances. Accordingly, the sentence of death was not so contrary to the evidence as to shock one's sense of justice.

**13.** While the failure of appellant's counsel to object to the testimony at trial would render this claim waived, we are reaching it under the capital direct appeal relaxed waiver doctrine. In *Commonwealth v. Freeman*, 827 A.2d 385 (Pa.2003), we abrogated relaxed waiver prospectively; that abrogation does not apply here because this appeal was briefed prior to the filing of our decision in *Freeman. Id.* at 403.

458

Appellant's final contention is that the trial court, *sua sponte*, should have given the jury an instruction pursuant to *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), that a life sentence means life without parole. As we have repeatedly held, a *Simmons* instruction is required only where the prosecution makes the future dangerousness of the defendant an issue in the case and the defendant specifically requests the instruction. *See, e.g., Commonwealth v. Spotz*, 563 Pa. 269, 759 A.2d 1280, 1291 (2000).[14] Here, the Commonwealth made no argument regarding appellant's future dangerousness and appellant made no request for an instruction; thus, no *Simmons* instruction was required.

Appellant nevertheless contends that the Commonwealth's evidence regarding his extensive history of violent crimes implied to the jury appellant's future dangerousness. This Court has already rejected this precise argument, holding that the aggravating circumstance of a significant history of prior violent felony convictions involves only the defendant's past conduct, not his future dangerousness. *Commonwealth v. May*, 551 Pa. 286, 710 A.2d 44, 47 (1998). Because appellant's future dangerousness was never made an issue in this case, and appellant requested no *Simmons* instruction, this claim fails.

Finally, this Court must affirm the sentence of death unless we determine that: (i) the sentence of death was the product of passion, prejudice, or any other arbitrary factor; or (ii) the evidence fails to support the finding of at least one aggravating circumstance. 42 Pa.C.S. § 9711(h)(3)(i)-(ii). After reviewing the record below, we conclude that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor. We also conclude that the evidence

14. A minority of Justices on this Court has consistently expressed the view that they would require a *Simmons* instruction in all cases. *See, e.g., Commonwealth v. Robinson*, 554 Pa. 293, 721 A.2d 344 (1998) (former Chief Justice Flaherty, dissenting; former Justice Zappala, concurring); *Commonwealth v. Clark*, 551 Pa. 258, 710 A.2d 31 (1998) (former Justice Zappala, concurring; Nigro, J., concurring).

was sufficient to establish the two aggravating factors found by the jury.

The judgment of sentence is affirmed.[15]

Former Chief Justices FLAHERTY and ZAPPALA did not participate in the decision of this case.

Justice NIGRO concurs in the result.

15. The Prothonotary of this Court is directed to transmit to the Governor's office a full and complete record of the trial, sentencing hearing, imposition of sentence and opinion and order by the Supreme Court in accordance with 42 Pa.C.S. § 9711(i).