J-S64015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN HENRY SNYDER, JR. | : | |
| | : | |
| Appellant | : | No. 344 MDA 2017 |

Appeal from the Judgment of Sentence December 13, 2016
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0002569-2015

BEFORE: PANELLA, J., SHOGAN, J., and FITZGERALD*, J.

MEMORANDUM BY PANELLA, J.                    **FILED DECEMBER 13, 2017**

A jury convicted Appellant, John Henry Snyder, Jr., of aggravated assault and endangering the welfare of his girlfriend's two-and-a-half-year-old child. Snyder contends the jury's verdict was against the weight of the evidence at trial. After careful review, we affirm.

Snyder's sister, Brenda Morales, testified she lived with Snyder, his girlfriend, and his girlfriend's child at the time of the instant offense. On that day, she left to go to visit her in-laws, leaving Snyder home alone with the child. Later that day, Snyder called her, claiming the child had been injured after falling down a flight of stairs in the home. Snyder sent Morales pictures of the toddler, which revealed bruising around and an eye and a hand-shaped bruise around the neck. These pictures were not presented as evidence at trial.

_____

* Former Justice specially assigned to the Superior Court.

Morales testified that after the fall, Snyder had claimed he had picked the child up with two hands, one on the child's diaper and the other around the child's neck. When she returned to the home, she took pictures of the child's injuries. Morales's pictures of the injuries were presented as evidence at trial.

Morales also testified to a conversation she had with Snyder some time after the incident. In this conversation, Snyder admitted he injured the child when he grabbed the child by the neck, hit the child in the face, and smashed the toddler's face into a wall. He admitted he had done this because he had been frustrated with the child's crying.

Several months later, Morales met a police investigator pursuant to an unrelated investigation. It was only at this point that she reported the abuse suffered by the child.

Snyder's girlfriend, the mother of the child, testified that she often left the child in Snyder's care when she went to work. She also testified that Snyder had called her on that day to inform her of the child's injuries. Over the phone, Snyder only related the child's fall. However, when his girlfriend returned home later that night, he informed her he had dropped the child when picking him up after the fall. He related he had caught the toddler around the neck after dropping him.

Dr. Kathryne Crowell, a pediatrician, testified that in her expert opinion, the injuries suffered by the child were not consistent with a fall

down stairs. Rather, she opined that they were consistent with strangulation and blunt force trauma. She further opined that the neck bruise would have required excessive force, and could not be caused by simply picking the child up by the neck. Finally, she stated that the injuries were consistent with Snyder's confession to Morales.

Snyder testified that he was asleep on a couch when he heard the child fall down the stairs. He rushed over to pick him up. He assumed the bruises on the child's neck came from when he picked the child up after the fall. He denied making any confession to Morales.

On appeal, Snyder contends the jury's verdict was inconsistent with the evidence at trial. He points to his girlfriend's testimony that there was a hostile atmosphere between herself, Snyder, and Morales regarding economic issues. He highlights irreconcilable inconsistencies between Morales's testimony and the testimony of his girlfriend. Further, he notes his girlfriend testified that Morales's children were abusive to the child, and Morales actively encouraged this abuse. Finally, Snyder notes Morales is facing charges related to her failure to seek appropriate care for the child after the injuries.

We do not review challenges to the weight of the evidence *de novo* on appeal. **See Commonwealth v. Rivera**, 983 A.2d 1211, 1225 (Pa. 2009). Rather, we only review the trial court's exercise of its discretionary judgment regarding the weight of the evidence presented at trial. **See id**. "[W]e may

only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice." ***Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003) (citations omitted). A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." ***Commonwealth v. Davidson***, 860 A.2d 575, 581 (Pa. Super. 2004) (citations omitted).

Here the trial court acknowledged the appropriate legal standards in addressing Snyder's challenge. The court identified the inconsistencies in Snyder's story, his confession to Morales, and Dr. Crowell's expert testimony as credible evidence that Snyder had abused the child. It therefore concluded that the jury's verdict did not shock its conscience, and denied Snyder a new trial.

After reviewing the transcripts, we cannot conclude that the trial court misstated the evidence of record. Nor can we conclude that its reasoning constitutes an abuse of discretion. The figure of Justice is firmly rooted to her pedestal here. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/13/2017</u>