NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| IAN LAMAR FIELDS, JR. | : | |
| | : | |
| Appellant | : | No. 189 WDA 2018 |

Appeal from the Judgment of Sentence September 19, 2017
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0000389-2017

BEFORE:  PANELLA, J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.:                    FILED JUNE 11, 2019

Ian Lamar Fields, Jr. appeals from the judgment of sentence entered on September 19, 2017, in the Allegheny County Court of Common Pleas. Fields contends that the verdicts of theft by unlawful taking and simple assault were against the weight of the evidence presented at trial. We affirm.

Fields and co-defendant Robert Logsdon proceeded to a joint non-jury trial. The trial court accurately summarized the facts adduced at trial as follows.

> On September 13, 2016, Ms. Jones was in the Brighton Heights neighborhood at a park on the North Side of Pittsburgh near the Central Aviary around 2:00 p.m. When she arrived at the park she saw people that she knew, named Mikey, Ian and Bobby. She testified that by Ian, she meant Ian Fields, the Defendant she identified in the courtroom.
>
> Ms. Jones stated she did not go to the park that day to meet the Defendant and his friends, but they approached her and she interacted with them because she knew them previously. She

further indicated there were other people there, roughly 5-6 total. While she was waiting for someone else to come to the park, she was struck on the left side of her head and it came from behind her. After she was struck, she fell to the ground but immediately got back on her feet and she asked the group who hit her. No one responded that they hit her but she had a feeling that it was either Bobby or Ian because of their location when she arose to her feet again. Ms. Jones said that Bobby, Ian and another individual offered to take her away from the park, she went with them to a pizza parlor on Brighton Road and Bobby offered to buy her a drink.

After leaving the pizza parlor, they all went to a set of steps on Shimmer Street. At this point in time, she felt safe with them. After the spoke with an individual named Bill, they headed to a second set of city steps where Ms. Jones observed an individual who she recalled was previously in front of the pizza parlor. Ms. Jones next recalled that she recognized three other individuals that were at the park earlier and they walked one by one to the city steps and they all surrounded her. At this point, she attempted to walk away but Bobby put his arm out to block her from leaving and then he struck her on the left side of her head. She testified this time she could clearly see Bobby's face and there was no doubt it was him who hit her. After she fell to the ground, everyone began to punch and kick her and they went through her pockets and took $200, a pill bottle with a few dollars in change and a bus transfer pass inside, and a Bic lighter.

After Ms. Jones yelled for help, all the individuals ran down the steps. Some neighbors came to her aid and she called the police. Ms. Jones was taken to Allegheny General Hospital to get treatment for her wounds. At this time, the Commonwealth offered into evidence certified medical records for Ms. Jones from the hospital, which were admitted into evidence with no objection. Ms. Jones testified that she sustained a black eye, a swollen head, scrapes/cuts all over her body and has chronic pain in her head/neck/back region.

Ms. Jones [] testified that she personally observed the guy she did not recognize hit her for sure, as well as, Ian and Bobby. She further [] testified that Bobby and Ian were involved in going through her pockets and taking items.

The Commonwealth called Officer Nicholas Holt to testify on its behalf. Officer Holt is a City of Pittsburgh police officer and has been so employed for the last 22 years. He has been assigned to Zone 1, the North Side, including the park near the Central Aviary and the city steps. He was employed in that capacity on September 13, 2016. On that date, he responded to a call for an assault and robbery and went to an address on Frederick Street, a couple houses down from the city steps. It was daylight and when he arrived at the scene near the city steps, he observed the victim being helped by two of the residents that lived there. The residents helping the victim had no involvement in this matter, they simply came to her aid. The victim informed Officer Holt that she was in the park behind the firehouse on Woods Run and Central with some guy she knew as Logsdon and another she knew as Ian. She also said that someone hit her, then they left the park and went up to the steps where she was hit again and three fellows went through her pockets and robbed her. She informed the officer that while on the steps, she knew at least two of her assailants as Logsdon and Ian and she had injuries to her face, arms and legs to corroborate her story. According to Officer Holt, she had a large contusion on the left side of her face by her eye and her arms and legs had scratches on them. He believed she needed medical treatment so the paramedics were called and she was transported to Allegheny General Hospital.

On cross-examination, Officer Holt indicated, at first she gave the name Michael Logsdon, then later corrected himself to say it was Bobby Logsdon. Although there was a third person there, Officer Holt stated she did not know who that person was.

Trial Court Opinion, filed 8/3/2018, at 3-6 (citations omitted).

At the conclusion of the trial, the trial court found both defendants guilty of theft by unlawful taking and simple assault. The court immediately sentenced both defendants to a two-year period of probation. Further, the court imposed, as a condition of probation, joint and several restitution in the sum of $200.00 and required no contact with Jones.

Fields filed a timely post-sentence motion requesting a new trial, arguing that the verdicts were against the weight of the evidence. After granting Fields leave to file a supplemental post-sentence motion, the trial court denied Fields relief. This timely appeal followed.

Fields challenges the weight of evidence underlying his convictions. He maintains Jones's testimony was so inconsistent and incredible that the verdicts were against the weight of the evidence. See Appellant's Brief, at 4. This, Fields contends, shocks the conscience, and requires the grant of a new trial.

We do not review challenges to the weight of the evidence de novo on appeal. See Commonwealth v. Rivera, 983 A.2d 1211, 1225 (Pa. 2009). Rather, we only review the trial court's exercise of its discretionary judgment regarding the weight of the evidence presented at trial. See id. We may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice." Commonwealth v. Champney, 832 A.2d 403, 408 (Pa. 2003) (citations omitted). A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." Commonwealth v. Davidson, 860 A.2d 575, 581 (Pa. Super. 2004) (citations omitted).

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

Commonwealth v. Gibbs, 981 A.2d 274, 282 (Pa. Super. 2009) (citations omitted).

Fields argues that Jones's testimony was riddled with inconsistencies and contradictions. He highlights Jones's decision to leave the park with men that she believed had just assaulted her. Fields proceeds to note Jones's difficulties in identifying which assailant struck her first. He also draws attention to the discrepancies between Jones's testimony and her initial reports to the police.

However, the trial court, mindful of the appropriate legal standard, carefully reviewed any inconsistencies between Jones's trial testimony, the police report, and Officer Holt's testimony. The trial court concluded that Jones was confident in her identification of Robert Langsdon as the person who blocked her escape before she was beaten and robbed. Further, the court found she testified credibly that Fields was one of three men who rifled through her belongings and stole from her. Finally, the court found that any discrepancies between her testimony, the testimony of Officer Holt, and the information given to police as documented in the criminal complaint related to minor or tangential issues. Under these circumstances, the trial court concluded that its verdict did not shock the conscience.

After reviewing the transcripts and the certified record as a whole, we conclude that that the trial court accurately summarized the record. Thus, we find no abuse of discretion in its denial of Fields's challenge to the weight of the evidence and, consequently, a new trial.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/11/2019