J-S41016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
       :       PENNSYLVANIA
       :
      v.       :
       :
       :
CHARLES E. POOLE, III      :
       :
     Appellant    :   No. 22 EDA 2024

Appeal from the Judgment of Sentence Entered October 30, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0002510-2022

BEFORE: MURRAY, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KING, J.:            **FILED FEBRUARY 11, 2025**

Appellant, Charles E. Poole, III, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his jury trial convictions for two counts of aggravated assault and one count each of attempted murder, carrying a firearm without a license, and intimidation of witnesses or victims.[1] We affirm.

The trial court opinion set forth the relevant facts and procedural history of this appeal as follows:

> On June 6, 2017, Shadora Deans was shot three times with a .380 caliber handgun at close range near her home in Upper Darby, Pennsylvania. She was shot in the head and in the torso, but miraculously survived. Ms. Deans did not know who shot her, but described him as a black male with a black hooded jacket and dark hat. A witness in the area

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(1), (4), 901, 6106(a)(1), and 4952(a)(6), respectively.

heard the gunshots and observed a black male in a black hooded jacket run into a dark colored Nissan Maxima. Through investigation, law enforcement officials discovered that Ms. Deans and Appellant were co-defendants in a New Jersey identity theft case. In that case, Ms. Deans accepted a plea deal on February 25, 2016 and, as part of that deal, she was required to testify against Appellant. Ms. Deans was set to testify against Appellant on June 7, 2017. She was shot by Appellant on June 6, 2017. Following further investigation, an arrest warrant was issued for Appellant on April 12, 2022.

Prior to trial, the Commonwealth filed a … motion *in limine* to allow evidence of other crimes, wrongs, or acts, seeking to introduce evidence that Ms. Deans and Appellant were co-defendants in a New Jersey identity theft case. Through the motion, the Commonwealth sought to introduce testimony of two witnesses who were part of the identity theft ring in New Jersey. They would testify that Appellant threatened to kill anyone who snitched and that he claimed to have killed a woman in Upper Darby. The Commonwealth argued that the testimony was admissible as motive under [Pennsylvania Rule of Evidence] 404(b). The court held a hearing on the motion *in limine* on August 15, 2023, following which, the court granted the Commonwealth's motion.

The matter proceeded to a jury trial on September 19, 2023.

\* \* \*

Following closings, the jury began deliberations. Later that day, on September 22, 2023, the jury returned a verdict finding [Appellant guilty of the aforementioned offenses]. The jury also answered yes to two fact questions finding Appellant possessed a firearm on June 6, 2017 and finding Appellant employed force, violence, or deception on Ms. Deans. [The trial] court rendered a decision regarding the charge of possession of firearm prohibited,[2] as counsel agreed to bifurcate that charge. The court found Appellant

---

[2] 18 Pa.C.S.A. § 6105.

- 2 -

guilty of that charge and issued a separate verdict slip.

[On October 30, 2023, the court sentenced Appellant to an aggregate term of thirty-two (32) to sixty-four (64) years' imprisonment.] On November 29, 2023, following the court's granting of an extension of time to file post-sentence motions, Appellant filed a post-sentence motion challenging the weight of the evidence. The motion was denied on December 7, 2023.

(Trial Court Opinion, filed 3/1/24, at 1-2, 6-7) (record citations and some capitalization omitted).

Appellant timely filed a notice of appeal on December 20, 2023. On January 3, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on January 23, 2024.

Appellant now raises two issues for this Court's review:

Did the trial court abuse its discretion by denying Appellant's post-sentence motion challenging the weight of the evidence, where no one ever identified Appellant as the shooter and there was no direct or forensic evidence tying him to the crime?

Did the trial court abuse its discretion by allowing prejudicial other acts evidence that did not meet any of the enumerated exceptions to Pennsylvania Rule of Evidence 404?

(Appellant's Brief at 4).

In his first issue, Appellant asserts that "[t]here was no forensic or direct evidence that tied Appellant to the crime, and the surviving victim did not identify him as the shooter despite the fact that she knew him for years and the shooter was standing just a few feet away." (*Id.* at 10). Appellant

emphasizes that the Commonwealth's evidence consisted of "the testimony of criminal[s] awaiting sentencing, who had motive to fabricate their testimony in exchange for leniency." (*Id.*) "[T]he civilian witnesses who testified for the Commonwealth did not provide any direct evidence about the shooting— to the contrary, they merely painted Appellant as a violent criminal who frequently threatened people." (*Id.* at 11). Further, Appellant suggests that the jury gave undue weight to incriminating statements Appellant made in 2019 during a recorded conversation with an informant.

> The FBI secretly recorded Appellant talking about shooting a male in the head some time ago. (N.T. [Trial], 9/21/23, at 47-52). Even though the "confession" did not line up with many of the details of the instant shooting, the Commonwealth proffered this evidence as though it was a full confession. It was equally likely that Appellant was bragging to someone to gain credibility in the streets, or that he was talking about an entirely different shooting altogether.

(*Id.* at 12). Under these circumstances, Appellant concludes that the court erred by denying his challenge to the weight of the evidence. We disagree.

Our standard of review regarding challenges to the weight of the evidence is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the … verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> *Commonwealth v. Small*, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has

- 4 -

ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Champney***, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

Additionally, the Crimes Code defines aggravated assault as follows:

**§ 2702.  Aggravated assault**

**(a)        Offense defined.**—A person is guilty of aggravated assault if he:

(1)        attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

*        *        *

(4)        attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]

18 Pa.C.S.A. § 2702(a)(1), (4).  The Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  18 Pa.C.S.A. § 2301.

The Crimes Code defines murder and criminal attempt as follows:

**§ 2502.  Murder**

**(a)        Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

**(b)** **Murder of the second degree.**—A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

**(c)** **Murder of the third degree.**—All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.

18 Pa.C.S.A. § 2502(a)-(c).

**§ 901. Criminal attempt**

**(a)** **Definition of attempt.**—A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.

18 Pa.C.S.A. § 901(a).

The Uniform Firearms Act provides, in relevant part:

**§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms**

**(a)** **Offense defined.—**

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).

**§ 6106. Firearms not to be carried without a license**

**(a)** **Offense defined.—**

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who

carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106(a)(1).

The Crimes Code also defines the offense of witness intimidation as follows:

**§ 4952.  Intimidation of witnesses or victims**

**(a)      Offense defined.—**A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:

\*      \*      \*

(6)      Absent himself from any proceeding or investigation to which he has been legally summoned.

18 Pa.C.S.A. § 4952(a)(6).

"In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." ***Commonwealth v. Smyser***, 195 A.3d 912, 915 (Pa.Super. 2018) (quoting ***Commonwealth v. Brooks***, 7 A.3d 852, 857 (Pa.Super. 2010)).  "[A] perpetrator's identity may be established with circumstantial evidence." ***Commonwealth v. Dunkins***, 229 A.3d 622, 632 (Pa.Super. 2020), *cert. denied*, ___ U.S. ___, 142 S.Ct. 1679, 212 L.Ed.2d 584 (2022).  "This Court has recognized that '[e]vidence of identification need not be positive and certain to sustain a

conviction.'" ***Id.*** (quoting ***Commonwealth v. Ovalles***, 144 A.3d 957, 969 (Pa.Super. 2016)).

Instantly, the trial court provided the following explanation for its denial of Appellant's challenge to the weight of the evidence:

> As Appellant contends, the victim in this matter was not able to identify Appellant as the shooter, but identified him as a black male wearing a black hooded jacket, a black hat, and blue jeans. (N.T. [Trial], 9/20/23, [at] 28-34). The Commonwealth, as they are permitted to do, presented a case based largely on circumstantial evidence. That circumstantial evidence … overwhelmingly showed that Appellant was the person who shot Ms. Deans. [The trial] court is not permitted to second guess the credibility determinations of the jury, who clearly believed the testimony of the Commonwealth's witnesses.

(Trial Court Opinion at 8).

Following our review, we cannot say that the verdict is so contrary to the evidence as to shock one's sense of justice. ***See Champney, supra***. The Commonwealth's circumstantial evidence included: 1) Ms. Deans' testimony regarding her deal with New Jersey prosecutors to testify against Appellant; 2) testimony from Marcia Santiago and Emily Ewan explaining that they had also committed identity theft crimes with Appellant; Appellant threatened to harm Ms. Santiago if she stopped working with him, and Appellant bragged to Ms. Ewan about shooting an Upper Darby woman who planned to testify against him; 3) police testimony linking Appellant to the Nissan Maxima from the crime scene; 4) police testimony linking Appellant to a blue Chevrolet Impala; Ms. Deans testified that she had seen a blue Impala following her

around her neighborhood the week before the shooting; and 5) testimony from FBI Special Agent Adam Cook regarding the recorded conversation between Appellant and an informant; the conversation occurred in 2019, in conjunction with an unrelated investigation; during the conversation, Appellant stated that he had shot someone two years earlier with a .380 caliber handgun.

As far as the recorded conversation, the excerpts included in the trial transcript indicate that Appellant used male pronouns when referring to the person whom he shot. For example, at one point in the recording, Appellant stated: "He was still alive. The cops came to the scene. I was worried I [inaudible]. As soon as he see me, he scream and the bang in the torso [inaudible]. I'm scared as shit." (N.T. Trial, 9/21/23, at 52). Nevertheless, Appellant's remaining statements from this conversation—identifying the type of firearm used, the time when the shooting occurred, and the fact that the victim survived—described aspects of the crimes committed against Ms. Deans. Because the jury was free to believe all, part, or none of the evidence, it was free to credit those parts of the recording that supported the Commonwealth's theory of the case. *See Champney, supra*. Based upon the foregoing, adequate circumstantial evidence established the perpetrator's identity. *See Dunkins, supra*. Thus, the court did not abuse its discretion in ruling on Appellant's weight claim, and Appellant is not entitled to relief on his first issue. *See Champney, supra*.

In his second issue, Appellant asserts that the Commonwealth presented testimony from Ms. Santiago and Ms. Ewan regarding Appellant's prior bad acts. Appellant contends that the court permitted this testimony to demonstrate Appellant's motive, pursuant to Pa.R.E. 404(b)(2). Appellant insists, however, "that these witnesses' testimony had nothing to do with motive and was instead used for propensity purposes." (Appellant's Brief at 12).

> Both witnesses testified to past interactions with Appellant that had nothing to do with the victim in this case. Specifically, they testified that had previously committed identity theft crimes with Appellant. They also testified that when they no longer wanted to participate in those crimes, Appellant threatened them and their families.

(*Id.* at 13) (record citation omitted). Appellant concludes that the court abused its discretion by allowing the Commonwealth to present this improper, inadmissible testimony regarding his prior bad acts. We disagree.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

***Commonwealth v. LeClair***, 236 A.3d 71, 78 (Pa.Super. 2020), *appeal*

*denied*, 664 Pa. 546, 244 A.3d 1222 (2021) (quoting ***Commonwealth v. Belknap***, 105 A.3d 7, 9-10 (Pa.Super. 2014)).

"Relevance is the threshold for admissibility of evidence." ***Commonwealth v. Tyson***, 119 A.3d 353, 358 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 787, 128 A.3d 220 (2015).

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

***Commonwealth v. Danzey***, 210 A.3d 333, 342 (Pa.Super. 2019), *appeal denied*, 656 Pa. 9, 219 A.3d 597 (2019) (internal quotation marks omitted).

"Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, evidence of another crime, wrong, or act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). "In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." ***Id.***

"Evidence of prior bad acts may be admitted to establish the existence of a common scheme, [establish] an individual's motive, intent, or plan, or

[identify] a criminal defendant as the perpetrator of the offense charged." ***Commonwealth v. Ivy***, 146 A.3d 241, 253 (Pa.Super. 2016) (internal quotation marks omitted). "However, bad act evidence is only admissible … '1) if a logical connection exists between that bad act(s) and the crime charged, linking them for a purpose the defendant intended to accomplish, or 2) if the bad acts manifest a signature crime.'" ***Commonwealth v. Herring***, 271 A.3d 911, 919 (Pa.Super. 2022), *appeal denied*, ___ Pa. ___, 288 A.3d 865 (2022) (quoting ***Commonwealth v. Yale***, 665 Pa. 635, 659, 249 A.3d 1001, 1015 (2021)).

Instantly, the Commonwealth sought to establish Appellant's motive by introducing testimony from Ms. Santiago and Ms. Ewan regarding actions and statements while participating in the identity theft ring. (***See*** Motion *In Limine*, filed 7/20/23, at ¶¶4-6). The court conducted a hearing on the matter and granted the Commonwealth's motion. In support of its decision, the court explained:

> There could not be a more fitting example of admitting evidence of other acts to show motive, than this case. The evidence explained to the jury why Appellant would have wanted to shoot Ms. Deans. Its probative value far outweighed the potential for prejudice as much of the Commonwealth's case was circumstantial and these witnesses tied the evidence together.

(Trial Court Opinion at 9). Our review of the record confirms the court's conclusions.

Ms. Santiago testified that she first met Appellant in 2017 or 2018. Ms.

Santiago was introduced to Appellant so that she could "make money" to support her drug habit. (N.T. Trial, 9/20/23, at 7). Initially, Ms. Santiago provided her photograph to Appellant. Appellant used the photograph to obtain fake identification cards.[3] Thereafter, Appellant would take Ms. Santiago to banks, and she would utilize the fake identification cards to withdraw money from the accounts of others. When Ms. Santiago no longer wanted to participate in the scheme, Appellant told her she "would get fucked up" and "[t]hey would never find [her] body." (*Id.* at 8). Appellant also told Ms. Santiago "if [she] snitched on him that he couldn't bail [her] out and he knew where [her] loved ones were." (*Id.* at 9).

Ms. Ewan echoed Ms. Santiago's testimony about meeting with Appellant to make money to support a drug habit. (*See id.* at 16). Likewise, Ms. Ewan provided a photograph to Appellant for the purpose of creating fake identification cards. On approximately ten occasions, Ms. Ewan went to stores or banks to use the fake identification cards. Ms. Ewan also testified that Appellant instructed her not to "tell on him" if she was arrested. (*Id.* at 17). Appellant told Ms. Ewan "he has hurt people who were testifying against him and he'll do it again." (*Id.* at 18). Further, Appellant said "he shot a girl who was testifying against him," and the shooting occurred "[i]n Upper Darby

---

[3] Later, the Commonwealth presented testimony from Rodney Jean-Jacques, who confirmed that he made fake drivers' licenses for Appellant. (*See* N.T. Trial, 9/21/23, at 5).

somewhere." (*Id.*)

Contrary to Appellant's assertions, the testimony at issue clearly established his motive to shoot Ms. Deans. Ms. Deans' cooperation with New Jersey prosecutors threatened to derail Appellant's robust identity theft ring, and Appellant's comments to his confederates demonstrated that he was willing to resort to violence to protect his criminal enterprise. The prior bad acts evidence was logically connected to the current offenses. ***See Herring, supra***. On this record, the court did not abuse its discretion by admitting the prior bad acts evidence. ***See LeClair, supra***. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/11/2025