J-A10019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM GLENN CREPPS, | |
| Appellant | No. 499 WDA 2015 |

Appeal from the Judgment of Sentence February 12, 2015
In the Court of Common Pleas of Washington County
Criminal Division at No(s): CP-63-CR-0002749-2013

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PANELLA, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED July 1, 2016**

Appellant, William Glenn Crepps, appeals from the judgment of sentence of a fine of $300 and court costs, imposed after he was convicted, following a trial *de novo*, of the summary offense of harassment, 18 Pa.C.S. § 2709(a)(1).  Appellant challenges the sufficiency and weight of the evidence to sustain his conviction.  After careful review, we affirm.

The trial court summarized the facts of this case, as follows:

> On August 25, 2013, [] Appellant and [James Robert] Dawkins got into an altercation at the Chambers Dam Association.[1]  That morning, Dawkins was walking in the neighborhood to a neighbor's home when [] Appellant, who was on a riding tractor at the time, rode up to Dawkins and began to

_____

[1] The Chambers Dam Association is a nonprofit organization comprised of 27 members, all of whom own cabins next to a lake formed by Chambers Dam in Washington, Pennsylvania.  **See** N.T. Trial, 2/12/15, at 10 (Dawkins' describing the Chambers Dam Association).

speak to him. Dawkins could not hear what [] Appellant was saying because the tractor was running, and so Dawkins walked towards [] Appellant so that he could hear. Then Appellant and Dawkins had the following verbal exchange:

Appellant: "I didn't change the god-damned locks."
Dawkins: "I didn't say you changed the locks."
Appellant: "You're a jagoff."
Dawkins: "Fuck you Bill."

Immediately following this verbal argument, [] Appellant got up off of his tractor and began walking towards Dawkins. After approaching Dawkins, [] Appellant began swinging his arms with closed fists towards Dawkins. Appellant then hit Dawkins in the cheek with one of his closed fists. During this altercation, Dawkins had a coffee cup in his right hand. When Dawkins raised this hand to defend himself against [] Appellant's blows, his coffee cup was shattered by the force of [] Appellant's arms and closed fists. Dawkins then had attempted to return to his home, but Appellant continued to pursue him. At that point, Dawkins swung his right foot out and tripped [] Appellant, which caused [] Appellant to fall and sustain a substantial head injury.

Dawkins called 911 and [] Appellant got up off the ground and began throwing rocks at Dawkins. After this, [] Appellant got back onto the tractor. Shortly thereafter [] Appellant got off … the tractor once again and approached Dawkins and stated, "I'm going to go up on the hill and get my gun." Dawkins and Appellant then exchanged more profanities, and [] Appellant went back onto the tractor until the police arrived. Ultimately[,] both men were charged with Simple Assault and Harassment.

Trial Court Opinion (TCO), 5/13/15, at 2-3 (citation to the record omitted).

Prior to trial, the Commonwealth *nolle prossed* the charge of simple assault against Appellant. On February 12, 2015, the court convicted

Appellant of summary harassment.[2]  Appellant was sentenced to a fine of $300 and court costs.[3]

On February 19, 2015, Appellant filed a post-sentence motion, essentially challenging the sufficiency and weight of the evidence to sustain his conviction.  That same day, the court issued an order scheduling a hearing on that motion.  However, on February 20, 2015, the trial court issued an order vacating its prior order for a hearing, concluding that no post-sentence motions are permitted following a conviction for a summary offense.  *See* Order, 2/20/15 (citing Pa.R.Crim.P. 720(D) ("There shall be no post-sentence motion in summary case appeals following a trial *de novo* in the court of common pleas.")).  The court further directed that Appellant "has the right to file an appeal to the Pennsylvania Superior Court within 30 days from the entry of this order." *Id.*  Appellant filed a notice of appeal on March 19, 2015, which the trial court considered as timely.  Under this procedural posture, we will likewise deem Appellant's notice of appeal as being timely filed.  Appellant also timely complied with the trial court's order

_____

[2] We note that on that same day, the court also conducted a separate, non-jury trial and convicted Dawkins of summary harassment, as well.  He was sentenced to a fine of $300 and court costs.  *See* TCO at 2 n.2.

[3] Appellant's sentence was imposed on February 12, 2015, but the sentencing order was not entered on the trial court's docket until February 18, 2015.

to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, he presents one issue for our review:

> I. The evidence presented by the Commonwealth was insufficient to support a conviction for harassment and the conviction of Appellant … was against the weight of the evidence as determined by the court.

Appellant's Brief at 4.

Preliminarily, we note that Appellant improperly combines two distinct claims - a challenge to the sufficiency of the evidence, and an allegation that the court's verdict was contrary to the weight of the evidence. As discussed in further detail, *infra*, the main focus of Appellant's argument is an attack on the weight of the evidence; nevertheless, we will begin with a brief discussion of the sufficiency of the evidence to support his harassment conviction.

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. **Commonwealth v. Moreno**, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. **Commonwealth v. Hartzell**, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. **Moreno, supra** at 136.

**Commonwealth v. Koch**, 39 A.3d 996, 1001 (Pa. Super. 2011).

Appellant was convicted of harassment as defined in 18 Pa.C.S. § 2709(a)(1):

**(a) Offense defined.--**A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

(1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]

In concluding that the evidence was sufficient to prove that Appellant committed this offense, the trial court explained:

On August 25, 2013[,] Appellant and Dawkins got into a verbal disagreement that unfortunately escalated into a physical altercation. Dawkins and [] Appellant both testified that the men had exchanged unpleasant words. Dawkins credibly testified before this Court that [] Appellant had told him what he believed was, "I'm going to kick your ass." (NJT Transcript, Page 17, Lines 22-25). Trooper Ross, who responded to the scene, testified that [] Appellant … admitted to him that once the argument escalated he had told Dawkins, "I should get off this tractor and whoop your ass." ([***Id.*** at] 71, Lines 6-7). Dawkins credibly testified that after this threat was made, [] Appellant got … off of his tractor, and walked towards him. He testified that [] Appellant then began making swinging motions with closed fists in an attempt to hit Dawkins. In response, Dawkins stated that he raised his arms above his face to protect himself. He testified that he had a cup in his hand, and that [] Appellant's swinging fists caused the mug to completely break. Dawkins credibly stated that [] Appellant's conduct caused a scratch on his arm, and a cut on his thumb.

Appellant admitted that while he and Dawkins did exchange heated words, he did not recall making any threat to Dawkins, but stated, "I can't swear that I didn't say it or that I did say it. I don't remember." ([***Id.*** at] 96, Lines 18-24). When further questioned about this threat, [] Appellant testified that he "doubt[ed]" that he had said that ([***Id.*** at] 97, Line 2). Appellant testified to a completely different version of events, wherein he stated that he believed that Dawkins had thrown a coffee cup at the back of his head and that is what caused his injuries. ([***Id.*** at] 83-84, Lines 25-14).

This [t]rial [c]ourt, sitting as both the trier-of-fact and the evaluator of credibility, determined that Appellant did in fact

strike Dawkins and did verbally threaten him, and accordingly [that] he was guilty of the summary offense of Harassment as defined by 18 Pa.C.S.A. § 2709(a)(1).  Based on the testimony and evidence presented, this [c]ourt believes that …, despite [Appellant's] testimony that he did not pursue or swing his fists at Dawkins, and that he "did not remember" threatening to injure Dawkins, … Appellant did in fact aggressively approach and strike Dawkins.  The [c]ourt further found that based on the credible testimony of both Dawkins and Trooper Ross, that [] Appellant did make a threat to physically harm Dawkins. Notably, [] Appellant did not testify that *he did not* make this statement.  Despite the minor linguistic difference between the testimony of Dawkins and Trooper Ross regarding the specific words Appellant used to threaten Dawkins, this [c]ourt found that [] Appellant's conduct as described above demonstrated that he did intend to threaten[,] and did so threaten[,] Dawkins with physical contact by stating[,] "I'm going to kick your ass," or a variation thereof.

TCO at 5-6 (citation omitted; emphasis in original).

The trial court, as fact-finder, credited the testimony of Dawkins and Trooper Ross, and we may not disturb that credibility determination on appeal. ***See Commonwealth v. Holmes***, 663 A.2d 771, 774 (Pa. Super. 1995) ("On appeal we may not disturb [the fact-finder's] determination as to credibility.") (citation omitted).  After reviewing the testimony of those witnesses, we agree with the court that it was sufficient to demonstrate that Appellant struck Dawkins, and threatened to further harm him, while intending to "harass, annoy or alarm" Dawkins.  18 Pa.C.S. § 2709(a)(1).

Before leaving this issue, however, we address Appellant's argument that the physical evidence supported his version of the altercation, rather than Dawkins' testimony. ***See*** Appellant's Brief at 12 ("Dawkins also indicates that he smashed the mug in the confrontation with [A]ppellant ….

- 6 -

But after traversing 50-60 feet parts of the coffee mug were still found next to the tractor tire [it was uncontroverted][] … where [A]ppellant says he was struck by the mug.").  In support  of this claim, Appellant cites his own testimony that shards of the coffee mug were on the ground next to the tractor tire; our review of the record reveals that Appellant did not present any *physical* evidence to support that testimony.  Therefore, contrary to Appellant's claim, this is not a case "where the evidence to support the verdict is in contradiction to the physical facts…."  ***Id.***  (citation omitted).  Thus, Appellant's challenge to the sufficiency of the evidence is meritless.

Next, we address Appellant's argument that the court's verdict was contrary to the weight of the evidence.

> Our standard of review for a challenge to the weight of the evidence is well-settled: The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses. ***See Commonwealth v. Champney****,* 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied,* 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004). As an appellate court, we cannot substitute our judgment for that of the finder of fact. ***See id.*** Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. ***See Commonwealth v. Passmore****,* 857 A.2d 697, 708 (Pa. Super. 2004), *appeal denied,* 582 Pa. 673, 868 A.2d 1199 (2005). Our appellate courts have repeatedly emphasized that "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence." ***Commonwealth v. Forbes****,* 867 A.2d 1268, 1273 (Pa. Super. 2005) (internal quotes omitted).

> Furthermore,

> > where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying

question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Champney*, 574 Pa. at 444, 832 A.2d at 408 (citation omitted). *Commonwealth v. Rabold*, 920 A.2d 857, 860-61 (Pa. Super. 2007). Additionally, this Court has declared that "[a]n abuse of discretion is more than just an error of judgment and, on appeal, a trial court will not be found to have abused its discretion unless the record discloses that 'the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Commonwealth v. Lane*, 424 A.2d 1325, 1328 (Pa. Super. 1981) (citations omitted).

Here, Appellant contends the court's verdict was contrary to the weight of the evidence because the court erroneously disregarded the testimony of George McDonough, an ostensible eyewitness to the altercation between Appellant and Dawkins.[4] McDonough claimed that he was standing beside Dawkins when Dawkins threw his coffee mug at Appellant, who was sitting on the tractor. *See* N.T. Trial, 2/12/15, at 41, 50. According to McDonough, the mug struck Appellant in the back of his head, cutting him. *Id.* at 41. McDonough testified that Appellant never got off the tractor during the altercation with Dawkins. *Id.* at 53.

_____

[4] McDonough died prior to Appellant's trial. However, his testimony from a deposition he provided in a civil case related to the altercation between Appellant and Dawkins was read into the record.

Appellant maintains that "[o]nly [] McDonough (an unbiased and disinterested witness) gave an accurate portrayal of what occurred[,]" yet "[t]he trial court abuse[d] its discretion by discarding his testimony solely because there [was] what appears to the trial court to be a discrepancy in [A]ppellant's recollection of where McDonough was standing." Appellant's Brief at 14-15. The discrepancy to which Appellant refers is that McDonough testified that when Dawkins threw the cup at Appellant, McDonough was standing right beside Dawkins. *See* N.T. Trial, 2/12/15, at 41. However, when Appellant took the stand, he testified on cross-examination as follows:

[The Commonwealth:] When did you know what it was that hit you?

[Appellant:] After I woke up.

[The Commonwealth:] Okay. … [Y]ou woke up and you were disoriented, [and] at that point you see George McDonough and Forest Broderick; is that correct?

[Appellant:] Yeah. **They were coming down the hill.**

…

[The Commonwealth:] Okay. And you were present when we read into the record that Mr. McDonough said he was standing right next to Mr. Dawkins when he threw the cup?

[Appellant:] Yeah.

[The Commonwealth:] Okay. Is Mr. McDonough lying about the fact that he was standing right there when Dawkins threw the cup?

[Appellant:] No. That might be what he remembered. I swore to tell the truth when I come up here, and that's what I'm doing.

[The Commonwealth:] I understand. **But when you were talking to Mr. Dawkins, was Mr. McDonough standing there next to him?**

- 9 -

[Appellant:] **No.**

[The Commonwealth:] Okay. So Mr. McDonough, in his testimony, would be lying if he testified to that?

[Appellant:] Maybe he misunderstood.

*Id.* at 98-99 (emphasis added).

The trial court discussed the discrepancy between McDonough's testimony and Appellant's, and why it found McDonough's testimony incredible, stating:

> Appellant [] argues that the [t]rial [c]ourt erred by discounting the testimony of George McDonough. … [] McDonough testified that while he was standing next to Dawkins, Dawkins threw a coffee cup at the back of [] Appellant's head and that is how Appellant sustained his injuries. (NJT Transcript, Pages 53-55, Lines 12-23). However, during Appellant's cross-examination, Appellant testified that [] McDonough was not standing next to Dawkins. When asked if Mr. McDonough had lied about that fact, [] Appellant stated[,] "Maybe [McDonough] misunderstood." ([*Id.* at] Page 99, Lines 1-7). Based on [] McDonough's testimony, and [] Appellant's testimony that [] McDonough could have "misunderstood" the events as they occurred on the day in question, this [c]ourt found [] McDonough's version of events to be unreliable.

TCO at 9.

On appeal, Appellant essentially claims that the trial court abused its discretion by disregarding McDonough's testimony based on an inconsequential difference between his testimony and that of Appellant. Appellant understates the significance of their differing accounts of where McDonough was standing. Appellant's testimony that McDonough was 'coming down the hill' *after* the mug allegedly struck Appellant cast doubt on McDonough's ability to see what he claimed to have witnessed, and called

into question the credibility of his overall testimony regarding the incident. In light of this discrepancy, we ascertain no abuse of discretion in the trial court's decision to disbelieve McDonough's and Appellant's testimony and accept that of Dawkins and Trooper Ross. Accordingly, the court did not err in rejecting Appellant's challenge to the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/1/2016