J-A17019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                                               :           PENNSYLVANIA
                                                              :
                     v.                                   :
                                                               :
BRIAN GORDON                               :
                                                              :
                    Appellant              :       No. 3038 EDA 2019

Appeal from the Judgment of Sentence Entered April 22, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002526-2018

BEFORE: BOWES, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McCAFFERY, J.:         **FILED AUGUST 17, 2020**

Brian Gordon (Appellant) appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas, following his jury conviction of burglary/adapted for overnight accommodations[1] and related offenses. On appeal, Appellant argues: (1) the trial court erred in granting the Commonwealth's motion to amend the original criminal information charge of burglary/**not** adapted for overnight accommodations;[2] and (2) the verdict was against the weight of the evidence supporting his identity as the perpetrator. For the reasons below, we affirm.

---

[1] 18 Pa.C.S. § 3502(a)(1)(ii).

[2] 18 Pa.C.S. § 3502(a)(3).

The trial court summarized the evidence presented at Appellant's jury trial. The victim in this matter, Stephen Howard, testified to the following:

> [D]uring the early morning hours of April 3, 2018, Mr. and Mrs. [Tiffani] Howard, their three children and Mrs. Howard's mother were inside their home located at 310 Crimson Court, Warrington Township, Bucks County. At approximately 3:00 a.m., Mr. Howard entered the garage through the door connecting the kitchen to the garage. At the time, he observed [Appellant] in Mrs. Howard's car. Upon being confronted by Mr. Howard, [Appellant] fled the garage, pursued by Mr. Howard. After a brief foot chase, during which Mr. Howard never lost sight of [Appellant], Mr. Howard tackled [Appellant] and a struggle ensued. When police arrived on scene, Mr. Howard was on top of [Appellant]. In the immediate vicinity, police found approximately $30 in loose change[ ] scattered on the street, a plastic bag, and dark-colored work gloves. After the police arrived, Mr. Howard returned to his home to find the center console of his wife's car open and approximately $4.00 in change missing from the door pocket of the vehicle.

Trial Ct. Op., 1/10/20, at 4 (citations to trial transcript omitted). Pertinently, Mr. Howard testified he did not see the perpetrator's face while they were in the garage. However, Appellant's vehicle was found nearby. N.T. Trial, 1/7/19, at 13, 25.

Appellant was arrested at the scene. For this incident, Appellant was initially charged with burglary/**not** adapted for overnight accommodations, criminal trespass,[3] receiving stolen property (RSP), theft from a motor vehicle, disorderly conduct, and loitering and prowling at nighttime.[4]

---

[3] 18 Pa.C.S. § 3503(a)(1)(i).

[4] 18 Pa.C.S. §§ 3925(a), 3934(a), 5503(a)(4), 5506.

The Howards' neighbor, Ernest Rehr, testified that on April 3, 2018, while the chase and altercation between Appellant and Mr. Howard ensued, he awoke to his dog barking at the sound of two men shouting near his home. N.T., 1/4/19, at 175-76. Mr. Rehr looked out his window to investigate, saw his vehicle's interior dome light was on, and "realized that somebody had been in [his] car, [so he] called the police." *Id.* at 176-77. Police arrived and arrested Appellant. Police also learned that approximately $5 worth of coins had been taken from Mr. Rehr's vehicle. *Id.* at 181-82. For this incident, Appellant was also charged with theft from a motor vehicle, RSP, and loitering and prowling at night time.

Finally, we note Mr. Howard and Mr. Rehr's neighborhood was described as a quiet residential area with "good sized yards," most of which are not fenced. N.T., 1/4/19, at 148, N.T, 1/7/19, at 7. Mr. Howard's residence is on a cul-de-sac, while Mr. Rehr's home is located between two cul-de-sacs, one being Crimson Court.

On August 31, 2018, the Commonwealth filed a motion to amend the criminal information, seeking leave to change the burglary charge from burglary/**not** adapted for overnight accommodations to burglary/**adapted** for overnight accommodations. On January 4, 2019, the trial court heard argument, granted the Commonwealth's motion to amend, and immediately proceeded to trial.

At trial, Mr. Howard testified Appellant was wearing a white t-shirt, hoodie, or something similar, but Mr. Howard could not remember because the incident happened nine months prior. N.T., 1/4/19, at 142, 146. However, Officer Jamie Valerieno, a responding officer, testified that Appellant wore a blue and gray sweatshirt and sweatpants. *Id.* at 190. The Commonwealth presented a photograph, marked C-3, taken when officers arrived on scene and depicting Appellant on the ground in a sweatshirt and sweatpants, with black work gloves under his left arm. *Id.* at 191. Meanwhile, another responding officer, Officer Alexander Moldavisky, testified Appellant was wearing a long sleeve black shirt, matching the description in the affidavit of probable cause. *Id.* at 202-03, 215. Plastic bags and $30 in loose change were also scattered on the ground near Appellant. *Id.* at 195-96, 210. Finally, also presented at trial were Mr. Howard's *crimen falsi* convictions from Ohio, dated 2003 and 2010. *Id.* at 126-28.

Appellant testified in his defense to the following. On his way home from work in Bensalem, Appellant was paid to drop off co-workers at their homes in Warrington and Warminster. N.T., 1/7/19, at 29, 34. Along the way, Appellant stopped at the home of a former co-worker in Warrington. *Id.* at 30, 34. Appellant later stopped at a Wawa store, which did not have a bathroom, for coffee and "took the back . . . side road" out of the neighborhood. *Id.* at 31. With a sudden urge to urinate, Appellant stopped his car in the neighborhood. *Id.* at 31, 35. He took off his driving gloves to

relieve himself in someone's yard. *Id.* at 31, 36. When Appellant attempted to go back to his vehicle, he heard someone yelling in his direction, and was then tackled to the ground. *Id.* Appellant further testified that he had nothing to do with the $30 in change that was found on the ground close to him. *Id.*

On January 7, 2019, the jury returned a guilty verdict on the charges of burglary/adapted for overnight accommodations, loitering and prowling at night time, criminal trespass, theft from a motor vehicle, and RSP — all relative to Mr. Howard. The jury found Appellant not guilty of disorderly conduct with respect to Mr. Howard, as well as all charges related to Mr. Rehr's motor vehicle.

On April 22, 2019, the trial court sentenced Appellant to four to ten years' imprisonment on burglary/adapted for overnight accommodations, and one year of probation for loitering and prowling at night time, to be served consecutively. No penalty was imposed for the remaining convictions.

On May 2, 2019, Appellant filed a timely post-sentence motion challenging the weight of the evidence, which the trial court denied on September 24, 2019. A timely notice of appeal was filed on October 24, 2019. Thereafter, Appellant complied with the trial court's November 13, 2019 order directing him to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises two issues for our review:

[1] Did the Court err in granting the Commonwealth's motion to amend count one of the information to 18 Pa.C.S. § 3502(a)(1)(ii).

[2] Was the verdict against the weight of the evidence in that the complainant's testimony contained major discrepancies, and Appellant testified credibly that he did not commit the crimes.

Appellant's Brief at 4.[5]

First, Appellant argues the trial court erred in granting the Commonwealth's motion to amend the criminal information because the new charge, burglary/adapted for overnight accommodation, involved different elements than the original charge — burglary/**not** adapted for overnight accommodation. He emphasizes the court permitted the Commonwealth to amend the information on the day of trial. Appellant's Brief at 15. Appellant concedes "many of the facts as alleged were unchanged," but nevertheless avers the "untimely amendment was prejudicial as it changed the elements of the crime charged." Appellant's Brief at 16. We disagree.

"The decision of whether to allow the Commonwealth to amend the [i]nformation[ ] is a matter within the discretion of the trial court, and only an abuse of discretion will constitute reversible error." ***Commonwealth v. Small***, 741 A.2d 666, 681 (Pa. 1999). Pennsylvania Rule of Criminal Procedure 564 provides:

The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant

---

[5] For ease of review, we have reordered the issues.

would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564.

[T]he purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed. The test to be applied is:

> [W]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

> \* \* \*

> In reviewing a grant to amend an information, the Court will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

> \* \* \*

> Since the purpose of the information is to apprise the defendant of the charges against him so that he may have a fair opportunity to prepare a defense, our Supreme Court has stated that following an amendment, relief is warranted only when the variance between the original and the new charges prejudices an appellant[.] Factors that we must consider in determining

- 7 -

whether a defendant was prejudiced by an amendment include: (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

\* \* \*

If there is no showing of prejudice, amendment of an information to add an additional charge is proper even on the day of trial. . . .

***Commonwealth v. Sinclair***, 897 A.2d 1218, 1221, 1221-24 (Pa. Super. 2006) (citations omitted).

The Pennsylvania burglary statute states:

**(a) Offense defined.—**A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

(1) . . .

(ii) enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person is present; [or]

\* \* \*

(3) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense any person is present[.]

18 Pa.C.S. § 3502(a)(1)(ii), (3).

Here, the trial court opined:

- 8 -

The amendment of the criminal information did not alter the facts upon which the prosecution was based. The probable cause affidavit in support of the criminal complaint clearly alleges that [Appellant] entered the attached garage of a private, occupied residence. Those facts were presented at the preliminary hearing. [Appellant] was therefore on notice that the structure was adapted for overnight accommodation.

Moreover, the Commonwealth filed its Motion to Amend Criminal Information on August 31, 2018 — four months before trial. [Appellant], therefore, received ample notice of the Commonwealth's intent to seek to amend the criminal information to reflect the subsection of the burglary statute applicable to the factual allegations.

Finally, the amendment did not require any change in defense strategy. [Appellant]'s defense at trial was that, while he was in the neighborhood at the time the crime was committed, he was not the person who committed the crime. The amendment of the criminal information to reflect that the building burglarized was adapted for overnight accommodations therefore had no impact on defense strategy.

Trial Ct. Op. at 6-7 (citations to trial transcript omitted). We agree.

Appellant does not address, nor refute, the trial court's analysis that: (1) while the amendment was granted on the day of trial, the Commonwealth filed its motion four months earlier and thus he had notice; and (2) his defense strategy of mistaken identity was not affected. Both the Commonwealth's initial and amended information alleged Appellant entered the attached garage of the Howard residence. The new burglary charge that the Commonwealth wished to charge contained only one new element — that the structure **was**

adapted for overnight accommodation.[6]  Appellant understood he was in a residential area because he admitted at trial that he intended to urinate in someone's yard.  **See** N.T., 1/4/19, at 31.  Finally, Appellant fails to establish he was prejudiced, especially as he concedes "many of the facts as alleged were unchanged."  **See Sinclair**, 897 A.2d at 1223; Appellant's Brief at 16.  Appellant's sole claim of prejudice is that the "untimely amendment was prejudicial as it changed the elements of the crime charged."  Appellant's Brief at 16.  This argument is conclusory as well as circular; it merely cites the fact of the amendment without explaining particularly how he was prejudiced.  For the foregoing reasons, we do not disturb the order of the trial court permitting the Commonwealth to amend the information.

In his second issue, Appellant argues the verdict was against the weight of the evidence.  As stated above, his defense at trial was that another person committed the crimes.  Appellant maintains Mr. Howard's testimony regarding the perpetrator's clothing was inconsistent with other testimony and evidence presented at trial.  Further, Appellant avers Mr. Howard's *crimen falsi* record casted doubt on Appellant's identity as the actor because Mr. Howard was the only person to identify Appellant, and Mr. Howard testified he did not see the actor's face while inside his garage.  Meanwhile, Appellant maintains he

---

[6] We note Appellant's Rule 1925(b) statement raised an additional issue: a challenge to the sufficiency of evidence for burglary, on the ground that Mr. Howard's garage was not a separately secured or occupied building or structure.  He has abandoned this claim on appeal.

testified credibly that he "was never in the Howard[s'] garage" and did not commit the crimes.[7]  Appellant's Brief at 11. Appellant also contends another person committed the crimes and ran away, citing his acquittal of the charges relating to Mr. Rehr's vehicle.  Finally, Appellant avers pursuant to Mr. Rehr's testimony, "it would have been impossible for Appellant to have committed the theft at Mr. Rehr's house and then committed the theft at Mr. Howard's house."  Appellant's Brief at 13.

The Pennsylvania Supreme Court has stated:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court.  A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion.  Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'"  It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail."

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> > Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence**.  Because the trial judge has had the opportunity to hear and see the evidence

---

[7] Neither Appellant's Rule 1925(b) statement nor brief specify which of his convictions were allegedly against the weight of the evidence.  Nevertheless, we note Appellant's contention of mistaken identity and insistence that he did not commit any of the crimes.

presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations omitted).

A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but claims that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

*Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003) (citation omitted); *see also* Trial Ct. Op. at 3 (quoting same).

Our Supreme Court has explained:

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citations omitted).

In denying relief of Appellant's weight of the evidence claim, the trial court reasoned:

In support of his weight of the evidence claim, [Appellant] argues that the Commonwealth's witnesses, the homeowner,

- 12 -

> lacked credibility based on an inconsistency in the description of the clothing worn by the individual observed in the garage and [Appellant's] clothing. However, "the determination of the credibility of a witness is within the exclusive province of the jury." The inconsistency identified by [Appellant] is not of such a nature or extent as to make the jury's verdict so contrary to the evidence as to shock one's sense of justice. Moreover, the identification of [Appellant] as the perpetrator was established not only by the victim's identification of [Appellant] but by the fact that [Appellant] was immediately pursued and apprehended at the scene. [Appellant's] claim therefore lacks merit.

Trial Ct. Op. at 4-5.

Although this Court's review "is a review of the [trial court's] exercise of discretion, not of the underlying" weight of the evidence claim, Appellant's argument makes no reference to the trial court's discussion of having already denied relief on this issue. *See Clay*, 64 A.3d at 1055. We agree with the court's reasoning that the jury was free to believe all, part, or none of the evidence, and to determine the credibility of the witnesses' testimony. *See Champney*, 832 A.2d at 408; *Rakowski*, 987 A.2d at 1219.

Although there was conflicting testimony as to Appellant's clothing, and Mr. Howard admitted he did not see the actor's face while in the garage, Mr. Howard testified he never lost sight of Appellant while in pursuit. N.T., 1/4/19, at 133, 135, 147. Appellant also ignores that Mr. Howard tackled Appellant and remained "on top of" him until police arrived. *See* Trial Ct. Op. at 4. With respect to Mr. Howard's past *crimen falsi* convictions, the court charged the jury that it was to decide how the convictions affected his credibility. N.T., 1/4/19, at 126-28. The jury was free to believe his testimony identifying

Appellant as the person in his wife's vehicle. Moreover, Mr. Howard's immediate pursuit and apprehension of Appellant supported Mr. Howard's identification of Appellant as the perpetrator. Thus, the verdict does not shock one's sense of justice. Appellant's claim lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/17/20