J-S72014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARK POINDEXTER | |
| Appellant | No. 551 MDA 2016 |

Appeal from the Judgment of Sentence March 2, 2016
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0002008-2015

BEFORE:  GANTMAN, P.J., DUBOW, J., and STRASSBURGER, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED SEPTEMBER 27, 2016**

Appellant, Mark Poindexter, appeals from the judgment of sentence imposed in the Dauphin County Court of Common Pleas, following his bench trial conviction for possession with intent to deliver ("PWID") and criminal use of a communication facility.[1]

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises one issue on appeal:

>    WHETHER THE TRIAL COURT ERRED IN DENYING
>    APPELLANT'S POST-SENTENCE MOTION WHERE

---

[1] 35 P.S. § 780-116(a)(30); 18 Pa.C.S.A. § 7512(a), respectively.

---

*Retired Senior Judge assigned to the Superior Court.

> APPELLANT'S CONVICTION WAS AGAINST THE WEIGHT OF THE EVIDENCE SO AS TO SHOCK ONE'S SENSE OF JUSTICE WHERE APPELLANT DID NOT ENGAGE IN ACTS WHICH CONSTITUTE THE OFFENSE OF WHICH HE WAS CONVICTED?

(Appellant's Brief at 4).

Our standard of review for a challenge to the weight of the evidence is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

**Commonwealth v. Champney**, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (internal citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Deborah E. Curcillo, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (**See** Trial Court Opinion, filed May 2, 2016, at 4-7) (finding evidence established Appellant sold heroin to CI on two occasions; police

searched CI to confirm he possessed no drugs before entering Appellant's vehicle; officers testified that CI did not come into contact with anyone other than Appellant during controlled buys; when police arrested Appellant, he possessed bundle of heroin and cash that police had given to CI to purchase drugs; heroin recovered from Appellant's person matched heroin that CI turned over to police; police also recovered cell phone from Appellant, which rang when police dialed number used by CI to arrange drug transactions; police did not observe hand-to-hand transaction or conduct body cavity search of CI before he entered Appellant's car, but those details were inconsequential in light of all other evidence; verdict was not against weight of evidence). Accordingly, we affirm on the basis of the court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2016

- 3 -

COMMONWEALTH OF PENNSYLVANIA   : IN THE COURT OF COMMON PLEAS
                                        : DAUPHIN COUNTY, PENNSYLVANIA
                                          :
              v.                         : 551 MDA 2016
                                          : 2008 CR 2015
                                          :

MARK POINDEXTER                    : CRIMINAL APPEAL

## TRIAL COURT MEMORANDUM OPINION PURSUANT TO PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a)

Presently before the Superior Court of Pennsylvania is the appeal of Mark Poindexter (hereinafter "Appellant") from the judgment of sentence entered by this Court during a sentencing.

### Procedural History

Appellant was charged with two count of possession with intent to deliver and one count of criminal use of a communication facility on February 17, 2015. He proceeded to a bench trial on December 23, 2015 and was found guilty on those three charges. Appellant was sentenced on March 2, 2016 as follows:

- Count 1: two to four years in state prison
- Count 2: two to four year in state prison, concurrent to Count 1
- Count 3: one year of state supervision, consecutive to Counts 1 and 2

A timely post sentence motion was filed on March 9, 2016, and this Court denied it on March 16, 2016 with a brief memorandum opinion included. This Court received a timely Notice of Appeal on April 1, 2016, and ordered a Statement of Errors pursuant to Pa.R.A.P. 1925. Appellant complied.

1

31 –7

## Factual Background

On February 5, 2015, a confidential informant (CI) set up a buy with Defendant at the request of Detective Licata of the Harrisburg Police Department. (Notes of Testimony, Dec. 23, 2015, Trial[1] p. 9).

Harrisburg Police took photos of money and provided that money to the CI for the purchase of two bundles of heroin. (N.T. 11). The CI was under constant observation and had nothing else on his person during the purchase. The car he was in was searched prior to the first buy and the CI was searched once the buy was set up. (N.T. 10-11). Licata searched the CI's outer clothing, tops of the shoes, pockets etc., but did not go into the CI's underwear or do a cavity search. (N.T. 14, 46).

Surveillance of the buy location was set up before the CI was sent in. (N.T. 15). The buy location was changed so Licata instructed Officer Henry, who had the CI in his car, to drive to the original location while he and others set up in the new location. (N.T. 16). At the new location, a Midas, they observed a green Chevy Venture driven by a middle aged black male with sunglasses and a beard - the car and man matched the CI's description of the dealer. (N.T. 16, 18). Not wanting the deal to take place there, Licata instructed the CI and Officer Henry to go to a nearby gas station. (N.T. 16). Other officers who were also doing surveillance followed the green Chevy to the final location. (N.T. 19).

Licata was parked directly across the street, facing the green Chevy and the unmarked police vehicle containing Officer Henry and the CI. (N.T. 20). The CI exited the unmarked police vehicle and entered the green car with a license plate registered to Defendant. (N.T. 20-21). The CI was in the green car for about one to two minutes and Licata was able to observe and

---

[1] Hereinafter "N.T."

2

take video the whole time. (N.T. 21). The CI never made contact with anyone except the driver of the vehicle. (N.T. 21). He returned to Officer Henry and turned over two bundles of heroin. (N.T. 26).

On February 17, 2005, the CI again made contact with Defendant at the HPD's request and set up another purchase of two bundles of heroin. The police determined that this would be a buy/bust operation. (N.T. 30-32).

Again, the CI was searched, found to have nothing on him and provided with $120 in photographed bills to make the purchase. Officer Licata's car was also searched and found to be clean of any drugs, paraphernalia, money etc. (N.T. 31, 46).

The CI exited the unmarked police vehicle, entered the green van and after about a minute exited the green van and returned directly to the police unit with two bundles of heroin and no cash. (N.T. 33-34). Licata did not get a good look at the driver when the van pulled up to the location. (N.T. 33).

The Defendant left the area, but was arrested nearby. He had in his possession: a bundle of heroin in blue bags exactly like the ones the CI had purchased, a large amount of cash, including the money that HPD had provided to the CI, a cell phone with the same number the CI used to call Defendant to make the purchase. (N.T. 35-36).

Officer Licata acknowledged that he never observed any hand to hand transactions. (N.T. 51). No wire taps were used on any phone calls. (N.T. 51-52). Licata agreed that it was possible that a call forwarding function could have been utilized to make the phone that was seized ring. (N.T. 52-53). He testified that he called the phone seized form his phone, and his number came up on the seized phone. (N.T. 53).

3

An unidentified Hispanic male did approach the van prior to the Feb. 17, buy and was in the vehicle for about 30 seconds, but the CI never came into contact with this man. (N.T. 55-56).

Officer Gautsch testified that he observed Appellant in a Green Chevy Venture van at the Midas on February 5, 2015. (N.T. 68). On February 17, 2015, he observed the same vehicle and man while doing surveillance again for Officer Licata on the same target as the earlier February drug deal. (N.T. 70).

Detective Heffner ultimately arrested Appellant. (N.T. 83). Appellant stated he had no drugs and was not involved in drug dealing. Heffner searched him and discovered two cell phones, cash in his front and back pockets, and ten bags of heroin. (N.T. 83-84). The money included the buy money provided by Licata. (N.T. 84).

## Appellant's Statement of Matters Complained of on Appeal

- The guilty verdict for the charges of Possession with Intent to Deliver a Controlled Substance and Criminal Use of a Communication Facility were against the weight of the evidence so as to shock one's sense of justice.

## Discussion

Defendant was charged with and found guilty of two counts of manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance and one count of criminal use of a communication facility. The relevant statutes read as follows:

> Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a) (30)

and:

> (a)Offense Defined--A person commits a felony of the third degree if that person uses a communication facility to commit, cause or

4

facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act.

(c) Definition.--As used in this section, the term "communication facility" means a public or private instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to, telephone, wire, radio, electromagnetic, photoelectronic or photo-optical systems or the mail.

18 Pa.C.S.A. § 7512 (a) (c).

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in testimony or because the judge on the same facts would have arrived at a different conclusion.... Trial judges ... do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

Commonwealth v. Widmer, 560 Pa. 308, 744 A.2d 745, 751–52 (2000) (citations omitted).

In this case, the facts reveal that Appellant possessed heroin, a controlled substance, with the intent to deliver. Appellant sold heroin to the CI on Feb. 5, 2015 and also on Feb. 17, 2015. When he was arrested Appellant had a bundle of heroin on his person, in addition to a large amount of cash, including cash given to the CI for the purchase of heroin on Feb. 17, 2015 on his body. While the cash from the February 5, 2015, buy was not present, the bags of heroin matched identically and officer testified that Appellant was the driver of the Chevy van on both dates.

5

There is no requirement that officers observe hand-to-hand transactions to justify an arrest for possession with intent to deliver. The officers all testified that the CI did not come into contact with anyone else and Office Licata testified that the CI did not have any drugs on his body prior to entering the Chevy van. The most obvious conclusion is that while in the Chevy van the CI exchanged money given to him by police in exchange for heroin

Further, Appellant also utilized several cell phones to accomplish this goal. Possession with Intent to deliver is a crime under the Controlled Substance, Drug, Device and Cosmetic Act. The definition of a communication facility includes a telephone. At least one telephone, the one utilized for the Feb. 17, 2015, purchase was linked directly to the sale to the CI. Police called the number and it went to that phone. While Licata admitted it was possible that a call forwarding function was used to forward the number to the phone that still means that when the CI dialed the number, the call went to Appellant as the phone was in Appellant's possession on that day and time. That phone was in fact utilized to receive a phone call to set up a drug buy.

The officers' testimony was clear and they appeared to follow their regular procedures when it comes to working with confidential informants. There was no reason for this Court to disbelieve any of their testimony. We do not ignore that a full body cavity search was not done, nor do we ignore that no hand-to-hand transactions were observed, rather, when looking at all the evidence, it is clear that Appellant had heroin in his possession, he had cash used to purchase heroin, the CI received heroin from him and Appellant utilized his call phone to facilitate the purchase of heroin.

Our sense of justice cannot be shocked where, as here, so much evidence points to one conclusion.

6

For these reasons, we ask the Superior Court to uphold and affirm our judgment of

sentence entered by this Court during a sentencing hearing.

Respectfully submitted:

_____
Deborah E. Curcillo, Judge

Dated: _____5-2-16_____

*Distribution:*
The Superior Court of Pennsylvania
Hon. Deborah E. Curcillo
Kristie Falbo, Esq., Dauphin County District Attorney's Office
Erin Hayes, Esq., Dauphin County Public Defender's Office

7