J-S20044-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ASHLEY RAE WARNER | : | |
| | : | |
| Appellant | : | No. 1366 MDA 2020 |

Appeal from the Judgment of Sentence Entered September 9, 2020
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0006518-2019

BEFORE: NICHOLS, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED SEPTEMBER 03, 2021**

Ashley Rae Warner ("Warner") appeals from the judgment of sentence imposed following her conviction of driving under the influence: general impairment ("DUI").[1]  We affirm.

In its Opinion, the trial court summarized the factual history of this case as follows:

> On September 19, 2019, East Lampeter Township Officer Samuel Sanger [("Officer Sanger")] was in a marked police vehicle on patrol in the 2300 block of Lincoln Highway East, East Lampeter Township[, Pennsylvania.]  [Officer Sanger was] following [Warner]'s car, when he observed [Warner] move her car back into the right lane without activating her turn signal, [then] moved back into the left lane failing to use her turn signal, [] and drift through a crosswalk at an intersection when stopping for a red light.  [] Officer [Sanger] also noticed [Warner]'s vehicle weave significantly across the yellow line three times and the fog line

---

[1] 75 Pa.C.S.A. § 3802(a)(1).

four times. Due to the above, [] Officer [Sanger] initiated a traffic stop of [Warner].

Upon reaching [Warner]'s car[,[2]] which had its driver's side window down, [] Officer [Sanger] detect[ed] a moderate odor of alcohol. [Officer Sanger] notic[ed that Warner] had watery, blood[-]shot eyes and spoke with a slight slur[.] [] Officer [Sanger] asked [Warner] to step out of the car at which time she exited [the vehicle] in a lethargic manner. Speaking and answering questions slowly, [] [Warner] admitted she had one drink. She swayed when she walked, and [] Officer [Sanger] smelled [] alcohol[] on her breath. Thereafter, [Warner] consented to field sobriety tests. While performing the walk-and-turn test, [Warner] could not hold her position. She could not hold her right foot in front of her left and stood to regular [*sic*] standing position. She also missed heel-to-toe several times. [Warner] started to perform the one-leg stand[,] but [] Officer [Sanger] stopped her due to her instability and risk of falling. [] Officer [Sanger] concluded [that] it was not safe for [Warner] to drive and placed her under arrest. [Warner] was then transported to the Pennsylvania State Police Barracks[,] Troop J. Lancaster, for a breath test. At this point, [Warner] admitted to [] Officer [Sanger] that she had consumed a "trash can" consisting of a variety of alcoholic beverages.[3] She claimed to have been arguing with the passenger of her car[,] but there was no indication of a recent physical altercation. Results of [Warner]'s breath test were [0].82 and [0].84 blood alcohol content [("BAC")].

Trial Court Opinion, 12/3/20, at 1-2 (unnumbered, citations omitted, footnotes added).

---

[2] As noted *infra*, Warner's paramour was a passenger in the vehicle.

[3] Instantly, the "trash can" beverage contained Red Bull energy drink and slushy, as well as various liquors including rum and gin. **See** N.T. (Bench Trial), 9/9/20, at 21-22.

On September 20, 2019, the Commonwealth charged Warner with, *inter alia*, the above-mentioned DUI. Prior to trial, the Commonwealth withdrew the other offenses, and proceeded solely on the charge of DUI.

On September 9, 2020, following a bench trial, Warner was convicted of DUI. On the same day, the trial court sentenced Warner to six months of probation.[4] On September 18, 2020, Warner filed a timely post-sentence Motion, in which Warner argued that the verdict was against the weight of the evidence. On September 22, 2020, the trial court denied Warner's Motion. Warner filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

Warner now raises the following claims for our review:

1. Did the trial court err in finding that there was sufficient evidence to find Warner guilty of DUI …, where the evidence established that her operation of a motor vehicle after imbibing alcohol was justified by the defense of necessity?

2. Did the trial court err in finding Warner guilty of DUI …, because the Commonwealth was unable to link any observations of impaired driving to Warner and the evidence did not establish that her mental and physical faculties were impaired such that she could not safely operate a motor vehicle?

Brief for Appellant at 1.

In her first claim, Warner argues that the Commonwealth presented insufficient evidence of DUI, because her defense of justification by necessity

---

[4] We note that the trial court states that it imposed Warner's sentence on September 15, 2020, but the record reveals that Warner's sentence was imposed and docketed on September 9, 2020.

excuses her actions of "operating her vehicle after imbibing alcohol to a degree that rendered her incapable of safely operating that vehicle." Brief for Appellant at 26. Warner asserts that she properly invoked the defense of justification and that, accordingly, the burden was on the Commonwealth to disprove her defense beyond a reasonable doubt. *Id.* at 30. Warner contends that she was faced with a clear and imminent harm due to her violent domestic relationship. *Id.* at 27-28. Warner claims that she had been physically assaulted by her partner numerous times prior to the events of this case. *Id.* at 28. On the night in question, Warner asserts that she and her paramour had been arguing and, after one of them spilled a drink at the bar, her paramour stormed out demandnig that Warner drive him home. *Id.* Warner argues that her paramour physically attacked her in the car while she was driving.

Additionally, Warner argues that she could "reasonably expect that her actions would effectively prevent greater harm." *Id.* at 29. Warner contends that, as a victim of domestic violence, it was reasonable for Warner to believe that if she drove her paramour home, then Warner could safely escape the situation. *Id.*

Further, Warner contends that there was no legal alternative that would be effective in abating the harm of her driving while intoxicated. *Id.* at 29-30. Warner argues there was no safe way for her to exit the bar without her paramour, because her paramour was in the car "causing a scene and flailing

his arms." *Id.* Additionally, Warner concedes that it was physically possible for her to call the police, but argues that "there was no guarantee that calling the police and waiting for them to respond would have staved off another physical altercation or involved others who could then be harmed." *Id.*

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for a fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).

The Motor Vehicle Code states, in relevant part, that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(a)(1).

Regarding the defense of justification, generally, the Crimes Code provides as follows:

> **(a) General rule.--**Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if:
>
> > (1) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;
> >
> > (2) neither this title nor other law defining the offense provides exceptions or defenses dealing with the specific situation involves; and
> >
> > (3) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.
>
> **(b) Choice of evils.--**When the actor was reckless or negligent in bringing about the situation requiring a choice of harms or evils in appraising the necessity for his conduct, the justification afforded by this section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

18 Pa.C.S.A. § 503(a)-(b).

Our Supreme Court has previously stated that a necessity defense requires

> "(1) that the actor was faced with a clear and imminent harm, not one which is debatable or speculative; (2) that the actor could reasonably expect that the actor's actions would be effective in avoiding this greater harm; (3) that there is no legal alternative which will be effective in abating the harm; and (4) that the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue."

***Commonwealth v. Capitolo***, 498 A.2d 806, 809 (Pa. 1985). It is the defendant's burden to proffer sufficient evidence for each of the ***Capitolo***

factors. *See Commonwealth v. Manera*, 827 A.2d 482, 485 n.7 (Pa. Super. 2003) (stating that "the fact that a defense is theoretically available for a given crime does not mean that the Commonwealth must disprove justification in every case. Because justification is an affirmative defense, the defendant has the burden of asserting an appropriate offer of proof[.]").

Instantly, the trial court concluded that Warner had not presented evidence of a clear and imminent harm. *See* Trial Court Opinion, 12/3/20, at 6 (unnumbered). In particular, the trial court determined that Warner had only presented evidence of a single domestic violence incident from July 19, 2019, which was approximately three months prior to the instant DUI. *Id.* Additionally, the trial court concluded that Warner had viable legal alternatives other than driving drunk away from the tavern, including remaining at the bar, asking for help from someone in the bar, calling the police, or not imbibing alcohol. *Id.* Additionally, the trial court observed that Warner had no responsibility to drive her paramour home that night, and even if Warner had such a responsibility, it would not have outweighed Warner's duty to others on the road. *Id.* Our review of the record confirms the trial court's analysis and determinations, and accordingly, we cannot grant Warner relief on this claim. *See id.* at 6 (unnumbered); *see also* 18 Pa.C.S.A. § 503; *Manera*, *supra*.

In her second claim, Warner contends that the trial court's verdict was against the weight of the evidence. *Id.* at 31-33. Warner acknowledges that

Officer Sanger observed her vehicle swerving between lanes and crossing the yellow line, but contends that these traffic violations were a result of her paramour's assault and not due to intoxication. *Id.* at 33. Additionally, Warner contends that, regarding her BAC level above .08, Pennsylvania is not a zero-tolerance state and "a person can have an alcoholic beverage and get behind the wheel." *Id.* Additionally, Warner claims she had mouth piercings which could contain "residual mouth alcohol" and elevate the BAC level. *Id.* at 34. Warner argues that the field sobriety tests should not have been afforded any weight, because she had "bariatric surgery,"[5] which impaired her ability to perform the field sobriety tests. *Id.* at 33-34.

Our standard of review related to a challenge to the verdict as against the weight of the evidence is well settled.

> The weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the … verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Small*, 741 A.2d 666, 672-73 (Pa. 1999). Additionally, where the trial court has ruled on the weight claim, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence; rather, our appellate review is limited to whether the

---

[5] We note that bariatric surgery is more commonly referred to as gastric-bypass surgery.

trial court abused its discretion in ruling on the weight claim. **Commonwealth v. Champney**, 832 A.2d 403, 408 (Pa. 2003).

In its Opinion, the trial court addressed this claim as follows:

> In the instant case, Officer [] Sanger testified that he observed [Warner] drive in an unsafe manner, she smelled of [] alcohol [], her eyes were watery and blood shot, her speech was slurred, she moved lethargically, and she did not pass [the] field sobriety tests. Additionally, [Warner] admitted that she had been drinking a multiple-shot, highly caffeinated cocktail. [] Officer [Sanger] stated he had eighteen years of experience, extensive training in identifying impaired drivers, and was involved in over one thousand impaired driving cases.

Trial Court Opinion, 12/3/20, at 5 (unnumbered).

Additionally, at the close of trial, the trial court stated as follows:

> While [the trial court is] sympathetic to people who are in a domestic violence relationship, we also heard the testimony from the Commonwealth with regard to [Warner's] driving, the walk-and-turn and one-leg-stand, comments that [Warner] made to the officer admitting that she had [consumed] that concoction called a [t]rash [c]an, … as well as the fact that the blood alcohol test, through the intoxilyzer was [0].082, which is above the legal limit.

N.T. (Bench Trial), 9/9/20, at 78.

Our review of the record confirms that the trial court did not abuse its discretion when it concluded that the verdict was not against the weight of the evidence. **See Champney**, **supra**. Moreover, this Court will not reweigh evidence. **See id.**; **see also Commonwealth v. Koch**, 39 A.3d 996, 1001 (Pa. Super. 2011) (reiterating that it is not the position of this Court to "reweigh the evidence or substitute our own judgment for that of the fact finder"). Discerning no abuse of discretion, this claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/03/2021