J-A16041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES TAYLOR | : | |
| | : | |
| Appellant | : | No. 1771 EDA 2024 |

Appeal from the Judgment of Sentence Entered November 22, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003637-2019

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KING, J.:                                    **FILED JULY 17, 2025**

Appellant, James Taylor, appeals *nunc pro tunc* from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for aggravated assault and persons not to possess firearms.[1]  We affirm.

The relevant facts and procedural history of this matter are as follows. On April 18, 2019, Appellant approached Troy Young, who was standing in a playground talking with a friend.  Appellant left, and Mr. Young continued the conversation with his friend.  Less than 20 minutes later, Mr. Young saw a man walking towards him holding a gun.  Mr. Young immediately fled and heard gunshots from behind him.  Mr. Young fell to the ground, and as he attempted to stand, was shot in the right thigh.

_____

[1] 18 Pa.C.S.A. §§ 2702 and 6105, respectively.

When police arrived on scene, Mr. Young repeatedly and excitedly said Appellant's name: "James, James, James." (*See* N.T. Trial, 8/10/21, at 28-30, 115; Commonwealth's Ex. 9). When officers asked whether "James" had shot him, Mr. Young replied, "Yeah." (*See* N.T. Trial, 8/10/21, at 117-18). Mr. Young pointed to the house owned by Appellant's mother and stated that Appellant lived there. Police officers pointed a light at the house and saw Appellant standing outside. Mr. Young identified Appellant as the person who had shot him.

Police took Mr. Young to the hospital for treatment and brought Appellant to the hospital room for another identification. Appellant said, "This is my little cousin," and Mr. Young immediately fell silent. (*Id.* at 34-35, 76; Commonwealth's Ex. 4). When police questioned Mr. Young, he refused to look at Appellant and stated that Appellant was not the shooter. After Appellant was removed from the room, Mr. Young resumed talking with police while crying and expressing his fear, stating that he had fought with Appellant's brother the day before.

Mr. Young subsequently gave another statement to police, which he initialed, and in which he stated five times, at different points, that Appellant was the person who shot him. Mr. Young also stated that he had not identified Appellant in the hospital room because he was scared.

On August 10, 2021, the case proceeded to a bench trial. At trial, Mr. Young testified he could not recall who shot him, if he had told police who shot him, if he had ever given an interview with police, or if Appellant had been

- 2 -

brought to his hospital room for identification. Nevertheless, Mr. Young remembered other details regarding the shooting. When questioned regarding his prior identification, Mr. Young claimed that he had named Appellant because Appellant was the last person he had spoken to before being shot. However, Mr. Young also conceded that he had been speaking to his friend immediately before the shooting.

The Commonwealth also introduced at trial a recording of Mr. Young's call to 911. On the recording, Mr. Young stated Appellant's name multiple times, responded "yeah, yeah, yeah" when police officers asked if Appellant had shot him, and pointed out Appellant's mother's house. (**See** N.T. Trial, 8/10/21, at 115; Commonwealth's Ex. 9). However, after Appellant came outside, Mr. Young stated on the recording that he did not know who shot him.

Appellant testified in his own defense that on the day of the shooting he had gone to his niece's room 45 minutes before the shooting and did not leave the house again until after hearing the gunshots. Nevertheless, Appellant admitted speaking to Mr. Young the day of the shooting, but Appellant did not specify when the conversation took place. Further, although Appellant testified that he had not owned a gun at the time of the shooting, his hands tested positive for gunshot residue.[2] Appellant also acknowledged that a friend

_____

[2] The Commonwealth presented the testimony of forensic expert Lacey Shaw, who conducted an analysis of swabs taken from Appellant's hands, to testify about the presence of gunpowder residue on Appellant's hands immediately following the shooting.

- 3 -

of his owned a gun and had a license to carry a firearm.

Appellant also presented the alibi testimony of his mother, Linda Corbett, and niece, Miana Corbett. Appellant's mother testified that Appellant came into her house around 30 to 40 minutes prior to the shooting and was upstairs. However, Appellant's mother acknowledged that she was watching TV and facing away from the stairs and front door, and that Appellant was standing by the front door shortly after the shooting. Appellant's niece testified that Appellant was in her room prior to the shooting, but her testimony was inconsistent regarding whether she had ever left the room that day, and she admitted that she had not been paying attention to where she was at any given time.

On August 12, 2021, the court convicted Appellant of the aforementioned charges. On November 22, 2021, the court sentenced Appellant to an aggregate term of 5 to 10 years' incarceration. That same day, Appellant filed a post-sentence motion challenging the discretionary aspects of his sentence. On March 11, 2022, the court denied the post-sentence motion. Following a successful petition pursuant to the Post Conviction Relief Act ("PCRA"),[3] the PCRA court restored Appellant's post-sentence and direct appeal rights *nunc pro tunc*.

On February 14, 2024, Appellant filed a post-sentence motion *nunc pro tunc* challenging the weight of the evidence. On June 17, 2024, the court

_____

[3] 42 Pa.C.S.A. §§ 9541-9546.

denied the post-sentence motion by operation of law.  On June 24, 2024, Appellant timely filed a notice of appeal *nunc pro tunc*.  On June 25, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.  Appellant timely complied.

Appellant raises a single issue for our review:

> Whether the verdict was against the weight of the evidence.

(Appellant's Brief at 7).

Appellant argues that Mr. Young testified that he did not know Appellant and could not recall if Appellant was present the night of the shooting. Appellant contends that Mr. Young's statement was not written by him, but was transcribed by a police officer.  Appellant avers that although Mr. Young signed the statement, he did not read it and was not in the right state of mind at the time.  Appellant asserts that his testimony that he was at home at the time of the shooting had "the ring of truthfulness," and emphasizes that he answered every question presented by the Commonwealth.  (**See id.** at 11). Appellant further claims that the Commonwealth did not find the gun used in the shooting, and the main piece of evidence was Mr. Young's identification of Appellant as the shooter after the shooting.  Appellant insists that Mr. Young merely repeated his name after the shooting, which did not necessarily identify Appellant as the shooter.  Appellant highlights the testimony from his mother and niece that he was at home at the time of the shooting.  Appellant concludes the verdict was against the weight of the evidence, and this Court

must grant relief.  We disagree.

When examining a challenge to the weight of the evidence, our standard of review is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses.  An appellate court cannot substitute its judgment for that of the finder of fact.  Thus, we may only reverse the ... verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence.  Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (internal citations omitted).  A "trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Rivera*, 603 Pa. 340, 363, 983 A.2d 1211, 1225 (2009), *cert. denied*, 560 U.S. 909, 130 S.Ct. 3282, 176 L.Ed.2d 1191 (2010).

Instantly, the trial court rejected Appellant's challenges to the weight of the evidence.  (*See* Trial Court Opinion, 9/4/24, at 10-17).  First, the court noted the parties had stipulated that Appellant was ineligible to own a firearm. Notwithstanding Appellant's testimony that he had not fired a gun since he was 20 years old, the court explained that gunshot residue was found on Appellant's hands shortly after the shooting.  The court further highlighted

that Appellant admitted that a friend of his owned a firearm. Further, the court explained that Mr. Young identified Appellant as the shooter, to establish Appellant's possession of the firearm.

Second, the court evaluated the inconsistency in Mr. Young's various statements. Specifically, the court deemed Mr. Young's testimony regarding his memory of identifying Appellant as the shooter not credible. In so finding, the court concluded that Mr. Young appeared terrified of Appellant. Although the men had known each other for 20 years and called each other "cousin," the court explained that Mr. Young fell silent as soon as Appellant was brought into his hospital room, could not look at Appellant, and once Appellant was removed, began crying while expressing fear and frustration regarding Appellant's presence in the hospital room. Thereafter, Mr. Young gave another recorded interview, in which he stated five times that Appellant had shot him and correctly provided personal information and an identical timeline of events that he repeated at trial. Therefore, although the court found Mr. Young's testimony that he did not remember if Appellant was the shooter not credible, the trial court found the recorded interview and other statements given by Mr. Young credible.

Finally, the trial court found that, while Appellant's mother and niece testified consistently with each other, their testimony was not consistent with that of Mr. Young. The trial court further noted that their timelines of events were inconsistent with other evidence and Appellant's own testimony. The court emphasized that Appellant's mother and niece also admitted that they

were distracted by other things around the time of the shooting. Therefore, the trial court did not find Appellant's alibi witnesses credible.

Essentially, the trial court found that the credible evidence identified Appellant as the man who had shot Mr. Young, and did not find credible the testimony of Appellant or his alibi witnesses. The record supports these credibility determinations. On this record, we see no reason to disrupt the court's ruling on Appellant's weight claim. ***See Champney, supra***. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/17/2025